A95A2057. SMITH et al. v. COMMERCIAL TRANSPORTATION, INC. et al.
A95A2058. AMERICAN CASUALTY OF READING, PENNSYLVANIA v. SMITH et al.
(470 SE2d 446)

POPE, Presiding Judge.

At 4:30 one morning, defendant Michal Szaflarski was driving a tractor-trailer full of produce on I-75. As a result of his negligence, the tractor-trailer overturned, blocking all three lanes of northbound traffic.[1] Defendant Commercial Transportation, Inc. ("CTI") was Szaflarski's employer, and defendant American Casualty was CTI's insurer. Almost six hours after the Szaflarski accident, the tractor-trailer still had not been cleared from the road, and northbound traffic was backed up for two miles. Brian Marcus, a 16-year-old driving his family back from a trip to Florida, approached the congested area with his cruise control set at 65 mph. He failed to notice that the vehicles in front of him were slowing down, and struck the rear of another tractor-trailer. One of Brian's sisters (Shelby Marcus) was killed in the resulting accident, and another (Marissa Marcus) was injured.

Plaintiffs — Shelby's estate and Marissa — sued Szaflarski, his employer, and the employer's insurer. Additionally, plaintiffs sued the Department of Transportation, alleging that the DOT breached its duty to clear the highway and/or put up warning signs. The insurer moved for summary judgment on the ground that it could not be joined as a party under OCGA § 46-7-12 (e) or § 46-7-58 (e) because CTI was not a motor carrier at the time of the accident. This motion was denied. Subsequently, however, the trial court granted summary judgment for all defendants based on its conclusion that Brian's negligence was the sole proximate cause of the accident involving his family vehicle. In Case No. A95A2057, plaintiffs contend this grant of summary judgment for all defendants was error. And in Case No. A95A2058, the employer's insurer cross-appeals, asserting that its original motion for summary judgment should have been granted anyway.

---

[1] As this appeal is from a grant of summary judgment for defendants, we view the evidence in a light most favorable to the plaintiffs.

## Case No. A95A2057

1. Because a jury could find that Szaflarski's negligence proximately caused the Marcus accident, summary judgment should not have been granted for Szaflarski, CTI, and CTI's insurer ("the trucking defendants"). Determinations of proximate cause are for the jury, and may be taken away from the jury *only* if the situation is so clear that reasonable minds could not differ. See *Atlanta Obstetrics &c. Group v. Coleman*, 260 Ga. 569 (398 SE2d 16) (1990).

The trial court concluded that the intervening negligence of Brian Marcus cut off the liability of the trucking defendants as a matter of law. Clearly there can be more than one proximate cause of an accident, however, and "if the original negligent actor reasonably could have anticipated or foreseen the intervening act and its consequences, then the intervening act of negligence will not relieve the original actor from liability for the consequences resulting from the intervening act." *Perry v. Lyons*, 124 Ga. App. 211, 216 (1) (b) (183 SE2d 467) (1971). Moreover, "both the Supreme Court and this court have held in a plethora of cases that one who is negligent in blocking or obstructing a roadway, whether by turning, stopping, braking, backing, overturning, colliding, etc., is not relieved of the injurious consequences inflicted by the negligence of another motorist encountering the obstruction." Id. See also *Gen. Motors Corp. v. Davis*, 141 Ga. App. 495, 497 (2), (3) (233 SE2d 825) (1977); *Stern v. Wyatt*, 140 Ga. App. 704 (231 SE2d 519) (1976).

Defendants focus on the nature and degree of Brian's negligence (even though that is a disputed fact issue and this is their motion for summary judgment), arguing that because his behavior was so unreasonable, it could not be foreseen. Cf. *Black v. Ga. Southern &c. R. Co.*, 202 Ga. App. 805, 806 (1) (415 SE2d 705) (1992) (physical precedent only) (suggesting intervening negligent act will cut off liability unless it is a "normal" reaction). This is illogical, of course, since by definition *any* intervening negligent act will not be reasonable or normal, and we know that not all intervening negligent acts cut off liability. In any case, the foreseeability analysis is not that specific: the relevant inquiry is not whether the exact intervening negligent act was foreseeable, but whether, as a general matter, the original negligent actor should have anticipated that this general type of harm might result. See *Davis*, 141 Ga. App. at 497; *Stern*, 140 Ga. App. at 706. And as a general matter, it would be difficult to state that the possibility of subsequent collisions following an initial accident blocking the road is absolutely not foreseeable.[2]

---

[2] *Herring v. Condit*, 218 Ga. App. 855 (463 SE2d 532) (1995) is distinguishable, as the initial accident was *not* blocking the road and other drivers stopped (thereby causing the

Defendants also argue that the Szaflarski accident could not have proximately caused the Marcus accident because it was too "remote" in terms of time and space. While the five to six hours and two miles separating the accidents in this case are certainly factors to be considered in the foreseeability analysis, we cannot agree that they are decisive as a matter of law. A jury could conclude that when one negligently turns over a tractor-trailer full of produce, it is reasonably foreseeable that the time required to clear it and the resulting traffic back-up will be immense.

2. The trial court's grant of summary judgment for defendant DOT was proper, however. Plaintiffs assert that the DOT should have cleared the initial accident more quickly and should have posted warning signs. But under OCGA § 32-6-29 (b) (4), DOT officers have the authority to direct and control traffic at the scene of an accident *only* until law enforcement authorities arrive. In this case, law enforcement authorities arrived almost immediately and remained in charge throughout; DOT officials simply assisted in the arduous task of unloading the truck by hand. Nor did the DOT have the duty to post warning signs in an accident situation (as opposed to a lane closure for construction or maintenance), and there is no evidence that it assumed that duty. Furthermore, we have held that where a driver missed several indications of a hazard, jurors cannot speculate that putting up a sign about the hazard would have made any difference. See *Watson v. Marshall*, 212 Ga. App. 206, 207 (1) (441 SE2d 427) (1994). Thus, the failure to put up a warning sign could not have proximately caused the accident. Id. For these reasons, the grant of summary judgment for the DOT is affirmed.

## Case No. A95A2058

3. In its cross-appeal, CTI's insurer contends it could not be joined as a party under the motor carrier direct action statutes (OCGA §§ 46-7-12 (e); 46-7-58 (e)) because CTI was not a motor carrier at the time of the Szaflarski accident. Specifically, the insurer contends that because Szaflarski was carrying unprocessed produce at the time of the accident, CTI was not a motor carrier under OCGA § 46-1-1 (7) (C) (xi), which provides that the definition of motor carrier "shall not include . . . motor vehicles engaged in the transportation of unmanufactured agricultural products . . .; except that any operator of such a vehicle is required to register the exempt operation with the [Public Service Commission]." See also OCGA §§ 46-7-15; 46-7-60. In *Nat. Indem. Co. v. Tatum*, 193 Ga. App. 698 (388 SE2d 896) (1989), this Court held that the motor carrier direct action stat-

---

subsequent accident) even though they did not need to.

utes do not apply to allow a direct action against the insurer of a carrier engaged exclusively in an exempt operation such as the transportation of unmanufactured agricultural products. Unlike the carrier in *Tatum* who transported only potting soil, however, CTI was not engaged exclusively in an exempt operation under OCGA § 46-1-1 (7) (C). See also *Bailey v. Occidental Fire &c. Co.*, 193 Ga. App. 710 (388 SE2d 899) (1989) (applying *Tatum* rule where carrier engaged exclusively in the transportation of gravel, another exempt operation). While CTI was hauling produce on the occasion of this accident, it frequently hauled other types of loads which would not be exempt — which is presumably why it registered with the Public Service Commission as a motor carrier rather than a carrier engaged in an exempt operation. It would soon become unworkable to change statutory categorization with each change of load. Thus, under these circumstances, we conclude that CTI could not be considered a carrier engaged in an exempt operation despite its cargo of produce at the time of the accident, and the trial court did not err in denying the insurer's motion for summary judgment on this ground. See *Progressive Cas. Ins. Co. v. Scott*, 188 Ga. App. 75, 76 (371 SE2d 881) (1988) (physical precedent only).

*Judgment affirmed in part and reversed in part in Case No. A95A2057. Judgment affirmed in Case No. A95A2058. Beasley, C. J., and Ruffin, J., concur.*

DECIDED MARCH 6, 1996 —
RECONSIDERATIONS DENIED MARCH 28, 1996 —

*Gambrell & Stolz, Irwin W. Stolz, Jr., Charles N. Bowen, Seaton D. Purdom, O'Neal, Brown & Sizemore, Manley F. Brown, John C. Clark*, for Smith.

*Michael J. Bowers, Attorney General, George P. Shingler, Deputy Attorney General, Blasingame, Burch, Garrard, Bryant & Ashley, J. Ralph Beaird, Andrew J. Hill III, Milton F. Eisenberg II, Hicks, Casey, Young & Barber, William T. Casey, Jr., Carl B. Nagle*, for Commercial Transportation, Inc.

*Webb, Carlock, Copeland, Semler & Stair, Douglas W. Smith, David D. Cookson*, for American Casualty of Reading, Pennsylvania.