## A02A0397. STEVENS et al. v. DEPARTMENT OF TRANSPORTATION.
### (572 SE2d 1)

RUFFIN, Judge.

After their daughter, Kelly, died in an automobile collision, Paul and Dede Stevens sued the Georgia Department of Transportation ("DOT"), alleging that it negligently designed the traffic control devices at the intersection where the collision occurred.[1] The trial court granted the DOT's motion for summary judgment, and the Stevenses appealed. For reasons that follow, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] On appeal from a trial court's grant of summary judgment, we review the evidence de novo and in a light most favorable to the non-moving party.[3]

Viewed in favor of the Stevenses, the evidence shows that the collision occurred in Jones County, where State Road 11, a four-lane road, and State Road 18, a two-lane road, meet to form a "T" intersection. In February 1997, the county requested that the DOT approve stop and go traffic signals for the intersection, which was, at the time, controlled by stop signs. The DOT prepared a traffic engineering report on the intersection that specifically noted "[t]here are no sight distance problems." The report concluded that the request for traffic lights should be granted. The signals were installed on or about July 30, 1998, along with temporary, white flashing strobe lights to warn oncoming vehicles of the newly installed traffic signals. A DOT district traffic engineer explained that the strobe, which flashes while the signal is red, is often temporarily installed by the DOT when new signals are put up.

The collision in this case occurred on October 26, 1998. One of the cars involved was driven by Phillip Hatcher. Hatcher first drove through the intersection on October 26 while taking his daughter to school. He turned off State Road 18 onto the northbound lanes of State Road 11. In his deposition, Hatcher testified that this was the first time he had driven through the intersection after the traffic lights were installed. He also testified, however, that he did not recall seeing the traffic signals when he passed through the intersection that morning and he did not know whether the light was green, whether he first came to a stop, whether he followed the car in front

---

[1] Paul Stevens sued in his individual capacity and as the administrator of Kelly's estate. The Stevenses also sued other parties involved in the collision, but they are not parties to this appeal.

[2] See OCGA § 9-11-56 (c).

[3] See *White v. Cauthen*, 235 Ga. App. 245 (509 SE2d 140) (1998).

of him, or whether there was even a car in front of him. Hatcher explained: "I was used to approaching the intersection for years and just having a stop sign and pulling up like everybody else and going. I think that's what I did."[4]

After dropping his daughter off at school, Hatcher drove south on State Road 11 on his way to work. As Hatcher approached the intersection with State Road 18, he was in the right lane. Hatcher described the moments preceding the collision as follows:

> the sun was shining over to the left and it had hit me in the eye and I reached up to move my visor down, and when I looked up there were two cars . . . slowing down, and that's when I looked up and saw the light. . . . I was close to the light and I hit my brakes. . . . When I hit my brakes the car that I was driving started sliding through the intersection. . . . There was a little red compact car [that had] come out of that intersection. . . . I didn't see but one car, and that was the red car, and it came and went up to the left. . . . I was glad I missed [that] vehicle, then here [came another car]. I mean, . . . [it] just appeared there. And I realized I was going to strike them and I did.

Hatcher stated in his deposition that he thought "the accident could have been avoided if there had been better warning."

The car Hatcher struck was driven by Rhetta Faye Hill and also occupied by Kelly Stevens. Like Hatcher had done earlier that morning, Hill was turning off of State Road 18 onto the northbound lanes of State Road 11. Hill testified that, before the collision, her car was the fourth one in line waiting for a green light. When the light turned green, she followed the car in front of her, which was traveling at ten to fifteen mph. As she approached the intersection, Hill noticed that there was a car stopped in the left lane at the light Hatcher was approaching, and she "would have expected [Hatcher] to stop" for the red light. Kelly later died from injuries she sustained in the collision.

In support of their complaint against the DOT, the Stevenses attached the affidavit of an engineer, John Glennon. In his affidavit, Glennon concluded that the DOT breached a standard of care that "required the placement of extraordinary traffic control devices in advance of the intersection to both emphasize its presence and encourage drivers to reduce their speed." According to Glennon, if the DOT had complied with the requisite standard of care, "the collision between [Hatcher's] car and the vehicle in which Kelly Stevens was

---

[4] It appears that Hatcher had recently relocated to the area after having lived in Atlanta for approximately one year.

riding[ ] would have been avoided." In its motion for summary judgment, the DOT argued that it was entitled to judgment as a matter of law because, among other things, the Stevenses had not presented any evidence of causation. The trial court granted the motion without explanation.

On appeal, the Stevenses assert that the trial court erred in granting summary judgment to the DOT because evidence shows that the negligence of the DOT and Hatcher "contributed to the occurrence of the accident and therefore [both defendants] share the liability concurrently." We disagree.

This case is similar to *Watson v. Marshall*,[5] in which an accident victim claimed that the DOT caused a driver to go the wrong way — against oncoming traffic — down an interstate by failing to place adequate signals, such as a " 'wrong way' " sign to warn the driver that she was going the wrong way.[6] Like this case, the victim presented expert opinion evidence that the signage was inadequate and that the wrong way driving was, therefore, foreseeable. But the evidence showed that the driver did not pay any attention to the four signs that informed the driver where she was. Thus, we reasoned, "a jury [could] not speculate that [the driver] would have seen any sign DOT could have posted."[7] We concluded that, although the issue of proximate cause is generally a jury question, the "collision was not caused by DOT's failure to put up adequate signs; it was caused by [the driver's] turning onto an expressway without following any sign. Her conduct was unreasonable as a matter of law, and was not a hazard which the DOT should reasonably have foreseen."[8]

We reached a similar result in *Smith v. Commercial Transp.*,[9] in which the victims claimed the DOT breached its duty to put up signs warning drivers of an accident on the interstate. The evidence showed that the accident, which obstructed the roadway for almost six hours, caused traffic to back up two miles. When the victims' car approached the congested area, its driver had the cruise control set at 65 mph, "failed to notice that the vehicles in front of him were slowing down, and [he] struck the rear of [a] tractor-trailer."[10] Although we acknowledged that "there can be more than one proximate cause of an accident," we also recognized our holding in *Watson* that "where a driver misse[s] several indications of a hazard, jurors cannot speculate that putting up a sign about the hazard would have

[5] 212 Ga. App. 206 (441 SE2d 427) (1994).
[6] See id. at 206-207 (1).
[7] Id. at 207.
[8] Id. at 208 (2).
[9] 220 Ga. App. 866 (470 SE2d 446) (1996).
[10] Id.

made any difference."[11] Thus, we concluded that "the failure to put up a warning sign could not have proximately caused the accident," and summary judgment was therefore appropriate.[12]

The evidence showing a lack of causation in this case is even more compelling than in *Watson* and *Smith*. Here, Hatcher missed numerous indications that he was approaching an intersection controlled by a red light. Hatcher had driven through the same intersection earlier in the morning. Although Hatcher did not see the signal at that time, this was attributable to his own inattention. Indeed, he virtually conceded that he negotiated the intersection like he had for years when it was controlled by a stop sign. Hence, Hatcher drove by habit rather than by observation. When Hatcher approached the intersection for the second time, he failed to notice, until it was too late, that other cars around him were slowing down. And, while Hatcher saw, and barely avoided, the car in front of Hill's as it crossed the intersection, he missed seeing the other two cars that had already turned off of State Road 18 and onto State Road 11. Again, this was not due to DOT's negligence. Hatcher acknowledged that he looked away from his lane of travel to readjust his sun visor. Finally, it was estimated that Hatcher was 880 feet away from the intersection when his light turned from green to yellow, and 580 feet away when his light turned red. It is undisputed that, in addition to the red light, there was a white strobe light set up to warn drivers of the red light. Like all the other indicators, however, Hatcher failed to notice the strobe light.

Considering the fact that Hatcher missed all of these signals, a jury would be forced to speculate that he would have noticed or heeded another sign warning of the intersection.[13] Thus, the DOT's failure to install another sign did not proximately cause the collision, and it was entitled to judgment as a matter of law.[14]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED JULY 8, 2002 —
RECONSIDERATION DENIED JULY 24, 2002 

*Mullis, Marshall, Lindley & Powell, Julius A. Powell, Jr.*, for appellants.

*Thurbert E. Baker, Attorney General, Jones, Cork & Miller,*

---

[11] Id. at 867-868 (1), (2).

[12] Id. at 868 (2).

[13] See id.; *Watson*, supra.

[14] See *Smith*, supra; *Watson*, supra; *Jackson v. City of Hahira*, 244 Ga. App. 322, 324 (535 SE2d 327) (2000).

*Thomas C. Alexander, Christopher B. Jarrard, Warren C. Grice,* for appellee.