A08A2163. UNDERWOOD et al. v. SELECT TIRE, INC. et al.
A08A2164. BYERS WELL DRILLING v. SELECT
TIRE, INC. et al.
A08A2165. BRIDGESTONE FIRESTONE NORTH AMERICAN
TIRE, LLC v. SELECT TIRE, INC. et al.

(676 SE2d 262)

BARNES, Judge.

Trennis Elliot was driving a well-drilling support truck owned by Byers Well Drilling ("Byers") when he experienced a catastrophic blowout of the truck's right front tire. The explosion knocked the hood open, blocking Elliot's vision. He lost control of the vehicle and struck a van, injuring two passengers and killing Roberta Underwood. Individually and as the administrator of her estate, Gregory Underwood sued Elliot and Byers, as well as the company that sold the tire to Byers (Pro-Formance Carriers, Inc.), the company that installed the tire (Select Tire, Inc.), and the tire manufacturer (Bridgestone Firestone North American Tire).[1]

After extensive discovery, Underwood moved for partial summary judgment in his negligence claim against Select Tire and Pro-Formance, who then moved for summary judgment against him. Pro-Formance and Select Tire argued they had no legal duty to Underwood and that any breach of their alleged duty was not the proximate cause of the collision. The trial court denied Underwood's motion but granted summary judgment to Pro-Formance and Select Tire. Underwood appeals that order in Case No. A08A2163; Byers and Elliot appeal it in Case No. A08A2164; and Bridgestone appeals it in Case No. A08A2165.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Ford v. Bank of America Corp.*, 277 Ga. App. 708 (627 SE2d 376) (2006).

1. *The facts.* The record shows that Johnny Thomas owns Pro-Formance, a company that manufactures truck beds and trailers, and Thomas Truck Sales, which are located in the same facility. He also co-owns Select Tire, which is located across the street. Select Tire sells and installs tires and after-market wheels, and Pro-Formance buys tires and wheels from Select Tire for its trailers. Pro-Formance sells the tires attached to the trailers it manufactures and occasionally sells spare tires to customers.

---

[1] The passengers filed separate suits.

The tires involved in this litigation were originally on a truck Thomas owned and traded to a customer who wanted different wheels and tires, so Thomas took them off and had them placed in one of Select Tire's bays. When asked if he put the tires at Select Tire to sell, Thomas first testified, "Probably not, I did not think they were worth anything. They were just two big ol' rough tires," but then said he did not know why they were there.

Select Tire put all its used truck tires in one bay. Some of the tires were sold as scrap and some were recapped, according to the customer's preference. Some customers, including Byers, left their used tires at Select Tire to be recapped and put back on their trucks later. Select Tire's co-owner Tommy Lovell testified that Byers' president Lon Dillard asked him about these wheels and tires and Lovell told him to talk to Thomas because the tires belonged to him. Lovell would not have scrapped these tires because they were still usable.

Thomas testified that he accepted Dillard's offer of $500 for the two wheels and tires, called "flotation tires," which were wider than normal and therefore provided better traction off-road. He did not discuss Dillard's plans for the tires.

Dillard testified that he was at Select Tire looking for new tires when he asked Lovell about these tires, which were leaning up against the wall. He knew they were used but they still had "a good bit of tread left" and did not appear to be regrooved.[2] Dillard had regrooved a motorcycle tire once and thought it was very obvious, but at a later deposition he admitted he had no experience inspecting tires, regrooved or not, and he did not really know whether these tires had been regrooved; he just "felt they were not."[3] He knew regrooved tires should not be put on the front axle. He asked Lovell whether the wheels and tires would work on his truck and Lovell said they would as long as they had sufficient clearance. Dillard did not know how a tire expert would inspect a used tire or whether an inspection would require dismounting the tire from the wheel. He told Thomas at Pro-Formance that he wanted the wheels and tires for the front of his 1994 Kenworth water truck, and Thomas asked for $500. Dillard spoke with his partner and then bought them from Thomas.

No one expressed any concern to Dillard about putting these tires on the front end of the truck, and Dillard relied on the expertise

---

[2] A regrooved tire is one "with new tread produced by cutting into the tread of a worn tire." 49 USCS § 30123 (a) (1); 49 CFR § 569.3 (d).

[3] Although Pro-Formance argues that Dillard's later testimony was contradictory and should be construed against him under the *Prophecy* rule, that rule is inapplicable because Dillard is not a party. *Thompson v. Ezor*, 272 Ga. 849, 851 (2) (536 SE2d 749) (2000).

of the seller and installer to select the right tires and to follow any applicable federal regulations. He would have expected them to advise him if the tires had been regrooved and should not have been placed on the front axle, although in his opinion no one could tell by looking that the tires had been regrooved.

After paying Thomas, Dillard asked Lovell to exchange the wheels and tires for the existing front tires on the water truck. Lovell visually inspected the tires, looking for cracks in the tread, checked the air pressure, then bolted them on. He could not tell if they had been patched without taking the tires off the wheels, which he did not do. He was not concerned about putting these tires on the front because he could see they had not been recapped and testified they had not been regrooved. Lovell knew from experience these were the right size and type of tire for this type of truck and use, being made for vehicles with a heavy front end to use in mud and soft ground, and also knew that it was illegal to put recapped or regrooved tires on the front axle. He would not have scrapped these tires because they were usable, and he had plenty of room so it would not have mattered to him if they remained in the shop for years. Select Tire charged Byers $10 to exchange the wheels.

Byers' co-owner Timmy Odom testified that he looked at the tires after they were put on the truck, and while he was no tire expert he thought these looked like good tires. The wheels and tires remained on the water truck without change until the collision more than five months and a few thousand miles later. The driver inspected the truck's air, oil, and lights daily, and never reported any problems with the truck.

Driver Elliot testified that he was the only employee who drove this water truck before the collision. He looked at the tires before he drove the truck that morning and saw they were not low or damaged, checked the oil, then securely latched the hood shut. After working a full day, he and a co-worker were on their way back to Byers on a four-lane highway driving about 60 mph when he heard a loud explosion and the hood flew up. The hood, which tilted up toward the front of the vehicle, blocked the windshield entirely. The truck "jerked real hard" to the right and Elliot was unable to hold the wheel straight. He veered off the road and struck a van waiting at an intersection, then both vehicles slid into an embankment. When he got out he could see where the wheel hit the pavement after the tire blew out, and the tire was shredded.

The parties' expert witnesses have widely divergent opinions, although all those who examined the tires said they had been regrooved and should not have been installed on the front axle. Additionally, expert Joseph Grant testified that the failed tire had been regrooved excessively and blew due to a localized impact injury

YALE LAW LIBRARY

late in the tire's life. Expert witnesses Troy Cottles, Jon Crate, and Gary Derien testified that the tire failed because it was defectively manufactured. Expert Christopher Shapley testified that the failure of the right front tire should not have caused the driver to lose control, which was caused in this case by the truck's poor mechanical condition. Expert E. Blake Wood testified that the condition of the truck's steering mechanism did not contribute to the driver's loss of control.

Expert Wade Bartlett testified he found no mechanical basis for the driver's inability to steer straight, and that a vehicle commonly moved laterally after a blowout. Finally, expert James Gardner testified that the tire failed because it had been regrooved excessively and blew because it sustained an injury that damaged the internal wires, not because it was defectively manufactured.

The trial court held that, pretermitting whether Pro-Formance and Select Tire represented that the tire was safe, Pro-Formance was not a tire dealer and therefore owed no duty to Byers to inspect the tire. The court also found that "Select Tire, as the installer, did not owe a duty to any party to inspect the tire for suitability for its intended use because the court cannot find and plaintiff has not cited to authority to the contrary," and therefore granted summary judgment to both parties on Underwood's ordinary negligence claim. As to Underwood's claim of negligence per se, the trial court found that the claim failed because the federal regulation Underwood relied on only prohibited *using* regrooved tires on the front wheels of any truck or truck tractor, and neither Pro-Formance nor Select Tire *used* the regrooved tires. None of the appellants enumerates as error the grant of summary judgment on plaintiff's claim of per se negligence.

2. *Duty as seller and installer*. Plaintiff Underwood and co-defendants Byers Well Drilling and Bridgestone contend that the trial court erred in holding that Pro-Formance owed no duty to Byers as a matter of law, because the law does not limit the duty to inspect only to retailers who sell a high percentage of a particular product. Likewise, they argue, the trial court erred in finding that Select Tire, as an installer, had no duty to inspect a tire for suitability and recognize a patent defect.

The elements of a negligence cause of action are: "(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm"; (2) a breach of this standard; (3) a causal connection between the conduct and the injury; and (4) damages from the breach of duty. *Lee Street Auto Sales v. Warren*, 102 Ga. App. 345, 347 (1) (116 SE2d 243) (1960). This legal duty may arise from "the general duty one owes to all the world not to subject them to an unreasonable risk of harm. . . .

[N]egligence is conduct which falls below the standard established by law for the protection of others" against this risk. *Bradley Center v. Wessner*, 250 Ga. 199, 201 (296 SE2d 693) (1982).

Federal regulations prescribe conditions under which regrooved tires may be sold for introduction into interstate commerce, including the width of the new grooves, the amount of tread material that should remain above the cord material after regrooving, and the absence of cracking or separation. 49 CFR §§ 569.1, 569.7 (a) (2). Industry standards echo the federal regulations. While the tires at issue here were designed and labeled by Bridgestone as regroovable, federal regulations and industry standards prohibit using a regrooved tire of this capacity on the front wheels of any truck or truck tractor. 49 CFR § 393.75 (e). Regrooved tires are not mounted on the steering axle because, as several experts explained, they are more susceptible to damage and the "disablement" of one of two front tires on a large truck may cause loss of steering control, whereas the loss of one of eight back tires is not as critical.

(a) *Seller.* Pro-Formance argues that it had no duty to Underwood because it was not in the business of selling tires and this was simply a "yard sale transaction" by a "mom and pop company that customizes pickup trucks and builds trailers." The record does not support that conclusion as a matter of law, however. The company makes and sells trailers, which come with the wheels and tires Pro-Formance selects and installs, along with a spare if the customer wants one.

The trial court relied on an Ohio case for the proposition that Pro-Formance had no duty to Byers because it was not a tire dealer but merely the tire's former owner. But the facts in that case do not mirror those here; in that case, the court held that the defendant, which sold a used car as is to a car dealer, owed no duty to the customer who bought it from the dealer, and here we have no similar intervening party. *Thrash v. U-Drive-It Co.*, 110 NE2d 419, 423 (158 Ohio St. 465) (1953). Additionally, nothing in our law requires a company to sell only or mostly one product before it incurs a duty toward its customers, and the evidence establishes that Pro-Formance did sell tires and was in a business that required an appreciation of the importance of having the right tires for the right application.

> [N]either duty nor negligence exists in a vacuum — they are entirely dependent upon circumstances involving others or their property. . . . The most common test of negligence is whether the consequences of the alleged wrongful act are reasonably to be foreseen as injurious to others coming within the range of such acts.

*Sims v. American Cas. Co.*, 131 Ga. App. 461, 468 (4) (206 SE2d 121) (1974), aff'd sub nom. *Providence Washington Ins. Co. v. Sims*, 232 Ga. 787 (209 SE2d 61) (1974).

> [I]f a common danger connected with the general use of a product exists, then . . . there may arise a duty to warn. See generally *Ogletree v. Navistar Intl. Transp. Corp.*, [269 Ga. 443, 446 (500 SE2d 570) (1998)]; *Banks v. ICI Americas, Inc.*, 264 Ga. 732 (450 SE2d 671) (1994) (defective design case which involves warning).

(Punctuation omitted.) *Boyce v. Gregory Poole Equip. Co.*, 269 Ga. App. 891, 895 (1) (c) (1) (605 SE2d 384) (2004).

Pro-Formance president and Select Tire co-owner Thomas testified he knew recapped tires should not be mounted on the front axle, although he did not know the difference between recapped and regrooved tires. In contrast, Byers' president Dillard testified he had no experience or education regarding tires or wheels and did not know how a tire person should inspect a used tire. He asked Select Tire co-owner Lovell if the tires would work on his truck and Lovell said yes. No one at Pro-Formance or Select Tire expressed concern about putting the tires on the front axle. He relied on the expertise of the seller and installer, expected them to know more about tires than he did, and thought they should have advised him the tires had been regrooved and should not be put on the front axle.

Select Tire was in the business of mounting and installing tires and should have known the tires were regrooved, he thought; likewise Pro-Formance should have known they were regrooved because its owner Thomas attended many vehicle auctions and bought and sold trucks. The co-owner of Byers Well Drilling looked at the wheels and tires after Select Tire put them on and said that while he was no tire expert, to him the tires looked good.

Although disputed, the evidence is sufficient to create a question of fact as to whether Pro-Formance's line of goods is sufficiently related to the tire business to conclude that Pro-Formance sells tires, and the trial court erred in holding otherwise. See *Holman Motor Co. v. Evans*, 169 Ga. App. 610, 613-614 (2) (c) (314 SE2d 453) (1984) (evidence sufficient to raise question whether dealer who inspected car was negligent in failing to discover defect in suspension).

Further, while Pro-Formance contends that it had basically thrown this tire away, its president Thomas testified he did not know why the tire was taken to Select Tire. Select Tire's co-owner Lovell testified that the bay in which the tire was located contained both tires to be scrapped and tires to be recapped and reclaimed. He personally would not have scrapped these tires because they still had

value, and they could have remained in the shop for years without being discarded. According to Byers' president, the wheels and tires were visible to customers in the front of the shop. Despite Thomas's testimony that he did not know the tires had any value, that he did not think they were worth anything, and that Byers offered him $500, he also testified that he did not remember the tires at all. Byers' president testified that Pro-Formance set the price at $500, contradicting Thomas's recollection that the tires were worthless and that Byers named the price.

"Whether there has been negligence and whether there was a causal relation and proximate cause to the alleged injuries are questions of fact for jury resolution, except where the circumstances are such that they will support but one result. [Cit.] Such was not the case here." *Wade v. Mitchell*, 206 Ga. App. 265, 269-270 (4) (a) (424 SE2d 810) (1992). While a retailer generally has no duty to disclose a latent product defect of which it has no knowledge, *Federal Ins. Co. v. Farmer's Supply Store*, 252 Ga. App. 17, 19 (555 SE2d 238) (2001), in this case, the "defect" — the regrooving — was not latent, but patent. Viewing the evidence in the light most favorable to the non-movant, this retailer knew or should have known the tire had a patent condition, not obvious to the buyer, that limited its use. The trial court erred in granting summary judgment to Pro-Formance on the ground that it was not a tire dealer.

(b) *Installer.* As to Select Tire, whether it breached a legal duty and whether that breach was a proximate cause of Underwood's damages are also jury questions. See *Wade v. Mitchell*, supra, 206 Ga. App. at 269-270. Select Tire's co-owner and installer Lovell knew it was "not legal" to put regrooved tires on the front axle. Byers' president Dillard testified that he relied on Select Tire's expertise in identifying whether these tires were appropriate for its vehicle, and the record contains expert testimony that a person in the tire business should have known that these tires were regrooved.

The record contains other evidence that Select Tire should have known the tires were regrooved and should have advised Byers not to put them on the front axle. Expert Grant thought the tire should have been inspected closely before being installed on the truck. A person who serviced tires could have looked at it and known it was regrooved because the edge of the original groove was visible, as was the irregular width of the new grooves. Expert Derien also thought someone in the tire business should have known this tire was regrooved because that fact was "quite clear just by looking at the tread." Another expert testified that upon casual observation it was "obvious" the tire had been regrooved and should not have been placed on the front axle, and also testified it was "not unreasonable" for a buyer going into a tire shop to rely on the shop's expertise to

ensure a tire was safe. Finally, one expert testified that it was the installer's responsibility to put the right tire on the truck, and to know that these tires were regrooved and should not be put on the front.

This evidence is sufficient to create a question of fact as to whether Select Tire had a duty to know and advise Byers about the suitability of the tire.

3. *Duty undertaken.* Additionally, having undertaken the duty to inspect the tires upon which Byers relied, Pro-Formance and Select Tire had to perform that duty with care.

> [U]se by a third person of a defective instrumentality, whether it be a vehicle, an elevator, a machine or an air hose, in the manner in which such instrumentality is customarily used, where the fact of inspection is known to the third person but the defect is unknown, demonstrates reliance by the third person upon the defendant's safety inspection of the defective instrumentality.

*Universal Underwriters Ins. Co. v. Smith*, 253 Ga. 588, 591 (322 SE2d 269) (1984).

The evidence establishes that both Pro-Formance and Select Tire were aware the tire was well-used when they sold and installed it. Further, some evidence in the record indicates Pro-Formance represented that these tires were appropriate for the use Byers intended. Byers' president Dillard testified that he asked Pro-Formance president Thomas if he thought the tires were good and told him he planned to put them on the front axle of his water truck. Thomas replied yes. Other evidence establishes that Select Tire represented to Byers that these tires would work on the water truck and inspected the wheels and tires before putting them on Byers' truck.

"If a person is without knowledge as to whether a particular thing is true or not, he ordinarily will act at his peril in representing it to be true." *King Hardware Co. v. Ennis*, 39 Ga. App. 355, 363 (147 SE 119) (1929).

> Representations imply knowledge, and if a tradesman sells or furnishes an article representing it to be safe for the uses for which it was designed . . . and if it turns out that the article was defective, then, in a suit against him for injuries occasioned thereby, an allegation that he either knew or ought to have known of the defects will be sufficient as a charge of negligence in his failure to know.

(Citations omitted.) *Floyd v. Morgan*, 106 Ga. App. 332, 335 (2) (127

SE2d 31) (1962). By making representations regarding the tire's quality and fitness for use on Byers' truck, Pro-Formance and Select Tire assumed the duty of discovery and warning. Pro-Formance's argument — that it had no duty to Byers because it is a simple operation, in contrast to Byers, which is a "sophisticated user" that "runs a fleet of huge well-drilling rigs" — raises a factual issue, not a legal one demanding summary judgment as a matter of law.

4. *State of tire when sold.* Pro-Formance and Select Tire argue that, regardless of their duty, Underwood produced no evidence that the tire was regrooved when Byers bought it. To the contrary, the evidence in this regard reveals a dispute. The experts testified the tire was regrooved when inspected after the accident.[4] While Select Tire's co-owner Lovell testified the tires were not regrooved when he put them on, Byers' president Dillard testified that the wheels and tires remained on the truck unchanged from the time Select Tire put them on until the collision. Although Dillard initially testified that the tires were not regrooved when he bought them, in a subsequent deposition as the corporation's representative under OCGA § 9-11-30 (b) (6), he explained that he testified to that effect "just because [he] felt they were not," not because he knew they were not; he had no experience inspecting tires, regrooved or not, and was surprised when the experts said the tires had been regrooved.

"Circumstantial evidence may be sufficient to create a jury issue in the face of direct evidence to the contrary[,]" if it is inconsistent with the defendant's evidence or demands a finding of fact on the issue in favor of the plaintiff. *Jones v. Bd. of Regents &c. of Ga.*, 262 Ga. App. 75, 81 (4) (585 SE2d 138) (2003). The circumstantial evidence that the tire was regrooved when Byers bought it is inconsistent with the direct evidence it was not, thus creating a factual issue for the jury to decide.

5. *Proximate cause.* Finally, the appellees argue that even if they had a duty and the tire was regrooved when sold, no evidence showed the regrooved tire proximately caused the collision. They contend that Underwood failed to present evidence the regrooving caused the tire to fail or that the truck crashed because the tire failed, and therefore the causal connection between their conduct and the injury is too remote to be the basis of a recovery.

Even if a defendant is negligent, if other circumstances "preponderate in causing the injurious effect, such damages are generally

---

[4] While Select Tire contends that a man who inspected the truck after the wreck said the tires were not regrooved, that deposition is not contained in the record on appeal and cannot be considered. "Statements of fact in the briefs of the parties unsupported by evidence in the record cannot be considered on appeal." *McGonagil v. Treadwell*, 216 Ga. App. 850, 853 (1) (456 SE2d 260) (1995).

deemed too remote and contingent to justify a recovery." *Wright v. Ashe*, 220 Ga. App. 91, 94 (469 SE2d 268) (1996). On the other hand, the fact that other causes may have contributed to an injury does not absolve a negligent defendant. A negligent act may have more than one proximate cause. *Ballenger Paving Co. v. Gaines*, 231 Ga. App. 565, 569 (1) (a) (2) (499 SE2d 722) (1998).

"[I]f the original negligent actor reasonably could have anticipated or foreseen the intervening act and its consequences, then the intervening act of negligence will not relieve the original actor from liability for the consequences resulting from the intervening act." *Smith v. Commercial Transp.*, 220 Ga. App. 866, 867 (1) (470 SE2d 446) (1996). Questions of negligence and proximate cause are usually not proper for summary adjudication and instead must be resolved by a jury except in the most plain and palpable cases. See *North v. Toco Hills, Inc.*, 160 Ga. App. 116, 119 (286 SE2d 346) (1981).

Here, the evidence is disputed as to whether the tire failed because it was regrooved, defective, or struck an object, and whether the driver lost control because the tire blew, the truck's steering mechanism was in disrepair, or he was incompetent. The issue is not whether the regrooving caused the wreck, but whether the wreck would have occurred if the regrooved tire had not been mounted on the steering axle.

Accordingly, the trial court's grant of summary judgment to Pro-Formance and Select Tire is reversed.

*Judgment reversed in Case Nos. A08A2163, A08A2164, and A08A2165. Johnson, P. J., and Phipps, J., concur.*

DECIDED MARCH 20, 2009 — 

*Steven L. Beard, Charles M. Cork III*, for appellant (case no. A08A2163).

*Hawkins & Parnell, Warner S. Fox, Christopher S. Keith*, for appellant (case no. A08A2164).

*Holland & Knight, Alfred B. Adams III, Caroline J. Tanner*, for appellant (case no. A08A2165).

*Temple, Strickland, Dinges & Schwartz, William D. Strickland, Cruser & Mitchell, William T. Mitchell, Jennifer G. Cowart*, for appellees.