A10A0929, A10A0932. LOWRY v. COCHRAN; and vice versa.
A10A0930. JOHNSON et al. v. LOWRY et al.
A10A0931. CITY OF EUHARLEE et al. v. LOWRY et al.

(699 SE2d 325)

JOHNSON, Judge.

Laura Candice Lowry was injured when she was struck by a skydiver whose parachute collapsed. The incident occurred during a festival that included a skydiving demonstration and while Lowry was standing just outside of the landing area for the skydivers. Lowry sued numerous parties, including (i) the City of Euharlee,

which owned the park where the festival took place, (ii) Norman Johnson, who is a skydiver that inspected and approved the landing site for the demonstration, and (iii) Ben Cochran, who is the skydiver who collided with Lowry as he approached the landing area, and who participated in at least one discussion of security measures with Johnson and festival organizers.

Cochran, who was also injured in the incident, countersued against Lowry, claiming that she was standing too close to the landing area. The City, Johnson, and Cochran filed motions for summary judgment in Lowry's suit against them; and Lowry filed a motion for summary judgment in Cochran's counterclaim. The trial court denied each of the motions, finding (i) that skydiving was an inherently dangerous activity that imposed strict liability upon the City, Johnson, and Cochran regardless of whether Lowry was adequately warned that she was standing too close to the landing area and (ii) that questions of material fact remained as to whether Lowry was negligent in standing where she did during the demonstration.

The trial court entered certificates of immediate review as to each of its orders, and we granted the applications for interlocutory review filed by Lowry, Johnson, the City, and Cochran. For the reasons provided below, we affirm the trial court's judgments denying the motions for summary judgment filed by Johnson and Cochran, and we reverse the trial court's judgments denying the motions for summary judgment filed by Lowry and the City.

On appeal from the denial of a motion for summary judgment, we conduct a de novo review of the law and evidence, viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law.[1] Moreover, we will affirm a trial court's denial of a motion for summary judgment if it is right for any reason.[2]

We first consider the trial court's denials of the motions for summary judgment filed by the City, Johnson, and Cochran and view the evidence as to each of their appeals in the light most favorable to Lowry. So viewed, the record shows that on October 22, 2005, Lowry attended the "3rd Annual Euharlee Veterans' Pow-Wow" at a park owned by the City. The Pow-Wow was organized by a committee that included Sam Hinson, Joey Pierce, and Captain David Duncan of the City of Euharlee Police Department, and that committee was overseen by Frankie Harris, who was City Manager of Euharlee. The Pow-Wow was open to the public without an admission charge, and

---

[1] *Clo White Co. v. Lattimore*, 263 Ga. App. 839 (590 SE2d 381) (2003).

[2] *Groover v. Johnston*, 277 Ga. App. 12, 17 (2) (625 SE2d 406) (2005).

the organizers invited members of the USA Patriots Professional Skydiving Team to provide a skydiving demonstration.

Festival organizers set up a "sacred circle" in the center of the park for use in Native American rituals, and that circle was marked off by hay bales. Johnson and Cochran agreed to use the circle as the landing area for their skydiving demonstration. Johnson also designated, and Cochran approved, an area of approximately 30 feet around the hay bales as a "buffer zone," but they did not place or cause to be placed any signs or ropes designating where the buffer zone was or indicating that spectators were not to be in the buffer zone. The skydivers required such a buffer zone at every event to provide a "margin of error" "in case something happens." Outside the buffer zone was an area that included vendor tents, and a wooded area lay on the other side of the vendor tents.

Johnson and Cochran met with festival organizers prior to the Pow-Wow to discuss safety procedures for the skydiving demonstration. Johnson and Cochran both claimed that they thought Hinson, Pierce, and Duncan would clear the buffer zone when the demonstration began and ensure that all spectators moved to the vendor area.

Lowry and her three children arrived at the Pow-Wow shortly before the skydiving demonstration began. They set up their chairs just outside of the landing area, next to the hay bales and within the unmarked buffer zone. Many spectators were gathered in the buffer zone, and some spectators were seated on the hay bales surrounding the landing area.

The record contains conflicting evidence as to what warnings were given to spectators regarding where to sit or stand during the skydiving demonstration. Hinson deposed that the announcer advised spectators to clear the buffer zone and move to the vendor area. Pierce deposed only that spectators were repeatedly warned to "back up" and "get away from the circle" of hay bales. Duncan deposed that the announcements did not warn the spectators to move all the way to the vendor area because they "didn't have to back up that far" to avoid the skydivers. Duncan also claimed that Hinson, Pierce, and the announcer were focused on keeping people from coming inside the landing area itself, and that he was walking around the circle of hay bales telling people to keep their feet outside of the circle. Duncan claimed to be unaware of any specific buffer zone surrounding the landing area that he was supposed to clear.

Duncan acknowledged that spectators were to keep "away from" the hay bales, however, and he deposed that he told Lowry's "group," which consisted of Lowry, her children, and two others, to move back and away from the hay bales. Nevertheless, Duncan did not speak to anyone in the group in particular, he did not use his

status as a police officer to force Lowry to move, and he did not think anyone in Lowry's group was in any danger.

Lowry claimed not to recall seeing Duncan or hearing his warnings. The only announcement she specifically remembered was hearing the announcer tell the crowd to look up because the skydivers were about to jump, and at that time she saw what looked like a dot moving away from the plane. Soon thereafter, she could distinguish the "dot" as a man coming down with a parachute.

While there is conflicting evidence regarding the number of spectators who remained in the "buffer zone" surrounding the landing area, it is undisputed that Lowry and her group were the only spectators remaining in the buffer zone in the area over which Cochran, who was the first skydiver, made his descent. In addition, while Hinson, Pierce, and Duncan all described Lowry as talking to others in her group and not paying attention to the skydiving, Lowry deposed that she continued to watch Cochran as he descended.

When Cochran was approximately 100 feet from the ground, his parachute collapsed, and he began a swift descent toward the ground. Lowry deposed that she heard panic in the announcer's voice, although she did not recall what he was saying. While Hinson claimed that he and several others were screaming at Lowry's group to move, Lowry deposed that she did not see Hinson or hear anyone screaming at her.

As Cochran approached the landing area, his leg collided with Lowry's shoulder and knocked her down. Cochran then struck the hay bales with his backside before hitting the ground inside the landing area.

1. We first find that the trial court erred in holding that the City, Johnson, and Cochran could be strictly liable for Lowry's injuries based on her claim that skydiving is "inherently dangerous." Lowry points to a myriad of evidence allegedly establishing that skydiving is dangerous, such as the fact that Georgia law allows insurance carriers to restrict coverage for aviation claims,[3] but none of the evidence cited by Lowry shows that skydiving is inherently dangerous to *persons on the ground* or that such risk cannot be eliminated by the exercise of reasonable care.[4]

Lowry also claims that her argument is supported by OCGA § 6-2-8, which relates to contact by persons or property on the ground with aircraft or "objects falling or thrown therefrom[.]" However, even if we found that this statute was relevant to skydivers, it

---

[3] See OCGA § 33-25-5 (a) (2).

[4] See *Gullock v. Spectrum Sciences and Software*, 146 FSupp.2d 1364, 1375 (2) (a) (M.D. Ga. 2001) (finding operation of air-to-surface weapons range not "abnormally dangerous" so as to impose strict liability).

provides that the contact with the person or property on the ground is prima facie evidence that the operator of the aircraft was negligent. As a result, OCGA § 6-2-8 does not require that strict liability be imposed here.

While Georgia courts have, on rare occasions, applied strict liability to activities deemed "inherently dangerous," that label has been applied only to activities such as mining or blasting.[5] Georgia courts have never applied strict liability to participants in aviation or recreational activities based on such a theory, and we decline to do so now.

2. Lowry claims that even if strict liability does not apply, the trial court still would have been correct in denying the motions for summary judgment filed by the City, Johnson, and Cochran because jury questions remained as to whether she was injured as a result of their negligence and as to whether she assumed the risk of her injuries or was contributorily negligent. Lowry properly points out that each of these matters is generally "not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial in the ordinary manner."[6] Summary judgment should be granted as to issues of negligence, assumption of risk, and contributory negligence only "in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached."[7]

(a) Regardless of whether issues of material fact remain as to the negligence of the City and as to whether Lowry assumed the risk of her injuries or was contributorily negligent, we first find that the City is immune from liability pursuant to the Recreational Property Act.[8] As provided in OCGA § 51-3-20, the purpose of the Recreational Property Act is to encourage both public and private landowners to make their property available to the public for recreational purposes by limiting the liability of the landowner. The Act generally provides that when a landowner invites or permits without charge any person to use its property for recreational purposes, it may not be held liable for personal injuries resulting from any act or omission of the landowner unless such injuries resulted from a "willful or malicious failure to guard or warn against a dangerous condition,

---

[5] See *Combustion Chemicals v. Spires*, 209 Ga. App. 240, 242 (1) (433 SE2d 60) (1993); *Berger v. Plantation Pipeline Co.*, 121 Ga. App. 362 (173 SE2d 741) (1970).

[6] (Citation omitted.) *Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 237 (227 SE2d 336) (1976).

[7] (Footnote omitted.) *McCray v. FedEx Ground Package System*, 291 Ga. App. 317, 322 (1) (661 SE2d 691) (2008).

[8] OCGA § 51-3-20 et seq.

use, structure, or activity."[9]

Here, admission to the Pow-Wow was open to the public without charge, and the only monies collected by the City related to the Pow-Wow consisted of a nominal parking fee. We have already found, and Lowry does not dispute, that such a fee does not waive immunity under the Recreational Property Act.[10]

Despite Lowry's claims that the City wilfully failed to warn her of the dangers related to the skydiving demonstration, the record is replete with evidence of warnings provided to the spectators. In contrast, a wilful failure to warn "imports a conscious, knowing, voluntary, intentional failure, a purpose or willingness to make the omission, rather than a mere inadvertent, accidental, involuntary, inattentive, inert or passive omission."[11]

While Lowry claims not to have heard any of the warnings other than the announcement to "look up," she does not claim or produce any evidence showing that the warnings were not actually given. Her assertion that the warnings were insufficient to alert her goes to the adequacy of the warnings, and amounts at most to negligent, and not wilful or malicious, behavior.[12] Because there is no evidence that the City wilfully or maliciously failed to guard or warn Lowry against any danger, the trial court erred in denying the City's motion for summary judgment, and we reverse in Case No. A10A0931.[13]

(b) Johnson asserts that he is also immune from liability because he was acting as an agent of the City and that the City's immunity should therefore be extended to him. Johnson cites to *Rea v. Bunce*,[14] in which a plaintiff sued city officials after she was injured during the testing of municipal sewer lines. In *Rea*, however, we found that the city officials were immune because they were acting as agents of the city in performing a governmental function.[15] Here, although the Pow-Wow was held in a park owned by the City, it cannot be said that the skydivers were agents of the city performing a governmental function. As a result, the trial court did not err in refusing to grant

---

[9] OCGA § 51-3-25 (1).

[10] *Majeske v. Jekyll Island State Park Auth.*, 209 Ga. App. 118, 119 (1) (433 SE2d 304) (1993) (nominal parking fee charged for each vehicle, regardless of the number of occupants or the type of vehicle, is not a "charge" for the recreational use of property under OCGA § 51-3-25).

[11] (Citations and punctuation omitted.) *Quick v. Stone Mtn. Mem. Assn.*, 204 Ga. App. 598, 600 (420 SE2d 36) (1992).

[12] *South Gwinnett Athletic Assn. v. Nash*, 220 Ga. App. 116, 118 (1) (469 SE2d 276) (1996) (applying a four-part test to determine whether a failure to guard or warn was "wilful," including whether the landowner chose not to guard or warn in disregard of the possible consequences).

[13] Id.

[14] 179 Ga. App. 628 (347 SE2d 676) (1986).

[15] Id. at 629 (1) (a).

summary judgment to Johnson on this ground.

(c) Johnson and Cochran both assert that Lowry has not raised any genuine issue of material fact regarding their alleged negligence, and that the trial court therefore erred in denying their motions for summary judgment. Conversely, Lowry claims that Johnson and Cochran were negligent in, among other things, providing inadequate security for their skydiving demonstration. She points to the fact that Johnson and Cochran approved the security precautions for the demonstration, that the "buffer zone" was not marked, that no warnings were posted to notify spectators regarding the existence of a buffer zone, and that, according to Duncan, no one ever told him that he was supposed to clear any specific buffer zone surrounding the landing area.

> The elements of a negligence cause of action are: (1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a causal connection between the conduct and the injury; and (4) damages from the breach of duty. This legal duty may arise from the general duty one owes to all the world not to subject them to an unreasonable risk of harm. Negligence is conduct which falls below the standard established by law for the protection of others against this risk.[16]

Here, it was undisputed that a cleared buffer zone was necessary to provide a reasonable level of safety for spectators, and a jury could find that it was reasonably foreseeable that a spectator remaining in the buffer zone could be injured as Lowry was. In addition, genuine issues of material fact remained as to whether Johnson and Cochran took necessary steps to ensure that the buffer zone was cleared, either by marking it with signs or ropes or by effectively communicating the importance of clearing the buffer zone to the festival organizers who remained on the ground. Lowry presented evidence that inadequate safety precautions resulted in her injuries, and that she suffered damages as a result of Johnson and Cochran's breach of their duty not to subject her to an unreasonable risk of harm. As a result, genuine issues of material fact remained as to whether Johnson and Cochran could be held liable to Lowry on the grounds of their alleged negligence.[17]

---

[16] (Citations and punctuation omitted.) *Underwood v. Select Tire*, 296 Ga. App. 805, 808-809 (2) (676 SE2d 262) (2009).

[17] Id.

(d) Similarly, we find that issues of material fact remain as to whether Lowry assumed the risk of her injuries or was contributorily negligent. The standard to be applied in assessing an assumption of the risk defense is a subjective one, geared to the particular plaintiff and her situation; whereas the defense of contributory negligence requires consideration of actions that would be taken by a reasonable person of ordinary prudence.[18] A defense of contributory negligence also requires a showing that the plaintiff's failure to use ordinary care for her own safety is the sole proximate cause of her injuries, even though such negligence concurs with the negligence of the defendants.[19]

Here, it was undisputed that (i) Lowry had never previously attended a skydiving demonstration; (ii) several adults, in addition to Lowry and her children, remained in "Lowry's group" within the area of the buffer zone in which Cochran descended; and (iii) Duncan, who had observed the skydiving demonstrations at previous festivals, did not believe Lowry and the people standing with her were in any danger. In addition, conflicting evidence was presented as to what warnings were provided to the spectators and as to how many people remained in the "buffer zone" during the demonstration. This evidence was sufficient to create a jury issue as to (i) whether Lowry had actual knowledge of the danger, understood and appreciated the risks associated with such danger, and voluntarily exposed herself to those risks,[20] and (ii) whether a reasonable person of ordinary prudence would have believed she was safe in the area outside of the landing zone marked by hay bales.[21]

Because genuine issues of material fact remain as to issues of negligence, assumption of the risk, and contributory negligence, we find that the trial court did not err in denying the motions for summary judgment filed by Johnson and Cochran. We therefore affirm in Case Nos. A10A0930 and A10A0932.

3. Finally, we address the trial court's denial of Lowry's motion for summary judgment in Cochran's counterclaim against her. As discussed above, one of the elements of a claim for negligence is a showing of a causal connection between the allegedly negligent conduct and the injury sustained by the plaintiff.[22]

Here, as acknowledged by Cochran, "an unknown and unavoidable event, probably wind, caused [his] parachute to collapse as he

---

[18] *Findley v. Griffin*, 292 Ga. App. 807, 810 (2) (666 SE2d 79) (2008).

[19] *Bossard v. Atlanta Neighborhood Dev. Partnership*, 254 Ga. App. 799, 800 (2) (564 SE2d 31) (2002).

[20] See *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996).

[21] See *Kennestone Hosp. v. Harris*, 285 Ga. App. 393, 399 (2) (c) (646 SE2d 490) (2007).

[22] *Underwood*, supra.

was descending toward the landing zone. . . ." Cochran also deposed that he did not know if his injuries resulted from his impact with Lowry's shoulder or his subsequent impact with the ground. Because Cochran has not presented any evidence that his injuries were caused by the collision with Lowry and not the inevitable collision with the ground that resulted from a collapsed parachute, the trial court erred in failing to grant summary judgment to Lowry, and we reverse in Case No. A10A0929.[23]

*Judgment reversed in Case Nos. A10A0929 and A10A0931. Judgment affirmed in Case Nos. A10A0930 and A10A0932. Miller, C. J., and Phipps, P. J., concur.*

DECIDED JUNE 1, 2010 —
RECONSIDERATION DENIED JULY 15, 2010.

*Groth & Makarenko, Paul L. Groth, Laura D. Johnson, Preston & Malcom, Robert M. Malcom,* for Lowry et al.
*William M. Akin,* for Cochran.
*Downey & Cleveland, William C. Anderson,* for Johnson et al.
*Archer & Lovell, David G. Archer,* for City of Euharlee et al.

---

[23] See, e.g., *Bashlor v. Walker,* 303 Ga. App. 478, 483 (2) (693 SE2d 858) (2010).