53344. GENERAL MOTORS CORPORATION v.
DAVIS et al.
53345. DAYS CHEVROLET, INC. v. DAVIS et al.

STOLZ, Judge.

The appellee Mrs. Dorothy Davis brought a wrongful-death action against the appellants, claiming that their negligence caused the death of her husband. The appellants' motions for summary judgment were denied. The denials of their motions are challenged on interlocutory appeals to this court.

On February 3, 1973, a large Chevrolet truck was purchased from Days Chevrolet by W. L. Brown. The new truck was given a routine safety inspection by Days Chevrolet. The truck had been manufactured by General Motors.

On March 1, 1973, the truck was being operated by an employee of its owner when it ceased to function in rush-hour traffic on Interstate Highway 75 in the Atlanta suburbs. The inability to operate was caused by a defect within the alternator, which caused a complete failure of the truck's electrical system. The defect was allegedly caused by General Motors' negligence in manufacturing the vehicle. It was also alleged that Days Chevrolet negligently failed to correct the defect or warn the owner of its existence. When the alternator failed to operate, the truck came to rest in the right-hand lane of two north-bound lanes of freeway traffic.

A substantial period of time later, when freeway traffic had returned to normal speed, the large Chevrolet

truck was still resting motionless on the freeway. Because of the electrical failure, no blinking lights were used to warn traffic of the danger, but the driver stood behind the truck to motion traffic around the vehicle. At approximately 6 p.m., a panel truck approached the stalled truck in the right-hand lane of traffic at freeway speed. Immediately behind the panel truck, Mrs. Davis' husband was driving a Volkswagen fastback. Construing the evidence most favorably to the nonmoving party on summary judgment, the facts indicate that the driver of the Volkswagen was unable to see the obstacle blocking his lane of traffic until, at a distance of two to three hundred feet from the motionless vehicle, the panel truck swerved into another lane. There was no visible reaction on the part of Mrs. Davis' husband; he drove his Volkswagen into the Chevrolet truck, thus causing his death.

Both appellants have made motions for summary judgment, which motions the trial judge denied. We affirm the denial of General Motors' motion and reverse the denial of Days Chevrolet's motion.

General Motors argues that, as a matter of law, its alleged negligence was not the proximate cause of the fatal collision. It is the contention of General Motors: (1) that there was no causation in fact, linking its alleged negligence to the death of the decedent, (2) that it owed no duty to the decedent in its construction of the faulty alternator, and (3) that the collision was such a remote consequence of its alleged negligence as to break the chain of proximate cause. None of these contentions has any merit when applied to the facts as outlined above.

1. We find first that there was causation in fact linking General Motors' alleged negligence to the freeway death. In other words, the "but for" test mentioned by General Motors in oral argument has been met.

According to Prosser, the "but for" rule may be stated as follows: "The defendant's conduct is not a cause of the event, if the event would have occurred without it." Prosser, Law of Torts (4th Ed. 1971), 239. In the instant case, if General Motors had not negligently manufactured the alternator, the truck would not have stalled, and there would not have been a stationary vehicle on the freeway

for the decedent to hit. Therefore, causation in fact does exist.

2. General Motors also claims that, under the rule expressed by Judge Cardozo in Palsgraf v. Long Island R. Co., 248 N.Y. 339 (162 NE 99) (1928), it owed no duty to the decedent because he was outside of their "ambit of risk" in construction of the alternator. This contention, too, is without merit.

In the construction of vehicles intended for use on our highways, the entire motoring public is arguably within the ambit of risk. A jury could reasonably find that the malfunction of a piece of automotive equipment would place any person using a highway in danger of property damage or bodily injury. See *Griffith v. Chevrolet Motor Division,* 105 Ga. App. 588 (1) (125 SE2d 525) (1962); *Moody v. Martin Motor Co.,* 76 Ga. App. 456 (46 SE2d 197) (1948); cf. *Sims v. American Cas. Co.,* 131 Ga. App. 461 (5) (206 SE2d 121), affd., 232 Ga. 787 (209 SE2d 61) (1974) (duty of insurance company which safety inspects a building to persons who later may be injured by disaster in building); *Simmons Co. v. Hardin,* 75 Ga. App. 420 (3) (43 SE2d 553) (1947) (duty of furniture manufacturer to family member of ultimate purchaser). " 'It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinarily prudent eye.' Munsey v. Webb, 231 U.S. 150, 156, 34 S.Ct. 44, 45 (58 L.Ed. 162) . . ." Palsgraf v. Long Island R. Co., supra, p. 100; see *Stern v. Wyatt,* 140 Ga. App. 704 (1) (1976).

3. General Motors next alleges, citing Whitehead v. Republic Gear Co., 102 F2d 84 (9th Cir. 1939), that the principle of remoteness releases it from liability. The principle of remoteness is applicable to situations where an intervening agency, such as the negligence of another, preponderates in causing the plaintiff's injury. *Higdon v. Ga. Winn-Dixie, Inc.,* 112 Ga. App. 500 (1, a) (145 SE2d 808) (1965). In Whitehead, supra, a truck became disabled on a highway due to the manufacturer's negligence, and a motorist later collided with the stationary vehicle. The accident was found to have been caused by either the negligence of the plaintiff himself or

the driver of the disabled truck, such intervening negligence making the collision a remote consequence of the manufacturer's negligence.

In the case sub judice, a jury could find that there was no intervening agency tending to break the chain of causation linking the collision to the manufacturer's alleged negligence. A jury could reasonably conclude that the occurrences subsequent to General Motors' alleged negligence were natural and foreseeable results of its negligence that did not so preponderate as to insulate the manufacturer from liability. See *Stern v. Wyatt,* supra, (1).

4. General Motors cites several cases which stand for the proposition that if a driver can avoid a collision by swerving or stopping its vehicle when the danger becomes apparent, then the driver's contributory negligence must preclude recovery. The correctness of this rule of law can not be questioned.

However, construing the evidence most favorably to the nonmoving party on summary judgment, we can not agree with General Motors' contention that the decedent had a half-mile of highway with clear visibility in which to react. There is evidence from which a jury could reasonably conclude that the decedent, through no fault of his own, had only a few short seconds between the time that he first saw the disabled vehicle when the panel truck swerved and the moment of the collision. "The duty to exercise ordinary care to avoid the consequences of another's negligence does not arise until such negligence becomes apparent, or an ordinary person could apprehend its existence, and unless it appears as a matter of law that the plaintiff was negligent this is a jury question." *Luke v. Powell,* 63 Ga. App. 795, 804 (12 SE2d 196) (1940). Thus, whether the appellee's husband had sufficient time to react, must be resolved by the jury. See *Stern v. Wyatt,* 140 Ga. App. 704, supra, (2).

5. Although we must affirm the denial of General Motors' motion for summary judgment, we find that the trial judge erred in denying Days Chevrolet's motion. It should first be noted that Mrs. Davis' wrongful-death claim could not be considered a derivative of any warranty action which the deceased could have had

against Days Chevrolet. Under Code Ann. § 109A-2—318 (Ga. L. 1962, pp. 156, 191), no warranty extended to the deceased. *Ellis v. Rich's, Inc.,* 233 Ga. 573 (212 SE2d 373) (1975); *Pierce v. Liberty Furniture Co.,* 141 Ga. App. 175 (3) (1977).

6. Nor does Mrs. Davis' claim against Days Chevrolet arise from any negligent act or omission of the dealer. Mrs. Davis alleges that Days Chevrolet negligently failed to inspect and correct the defective alternator in the truck. We are of the opinion, however, that Days was under no duty to inspect the alternator.

All of the evidence presented for summary judgment purposes indicated that the defect which disabled the vehicle existed within the body of the truck's alternator; at the very least, there is no evidence from which one could infer that there was anything tending reasonably to call the dealer's attention to the defect. "It is the general rule that a vendor or dealer who is not the manufacturer is under no obligation to test an article purchased and sold by him for the purpose of discovering latent or concealed defects, but that when he purchases and sells an article in common and general use, in the usual course of trade, without knowledge of its dangerous quality, and with nothing tending reasonably to call his attention thereto, he is not negligent in failing to exercise care to determine whether it is dangerous or not. In such a case he may assume that the manufacturer has done his duty in properly constructing the article and in not placing upon the market a commodity which is defective and likely to inflict injury." *King Hardware Co. v. Ennis,* 39 Ga. App. 355, 360 (147 SE 119) (1928); see *Pierce v. Liberty Furniture Co.,* supra, (2). *Washburn Storage Co. v. General Motors Corp.,* 90 Ga. App. 380 (2) (83 SE2d 26) (1954).

Of course, if a dealer does inspect or test its merchandise, it must do so nonnegligently. For example, in *Glynn Plymouth, Inc. v. Davis,* 120 Ga. App. 475 (170 SE2d 848) (1969), a dealer, in its state safety inspection of a new car, did not discover a brake defect which later caused a collision. The court held that the dealer could be held liable if the defect was one which reasonably might

have been discovered in the making of the state safety inspections. In *J. C. Lewis Motor Co. v. Simmons,* 128 Ga. App. 113 (195 SE2d 781) (1973), a dealer, in its state safety inspection of a demonstrator, did not discover a defect in the steering wheel which later caused a collision. Since a jury might have inferred from testimony at the trial that a proper safety inspection would have disclosed the defect, the court affirmed the judgment against the dealer.

In the case sub judice, a state safety inspection and routine predelivery inspection were made of the Chevrolet truck. However, such inspections do not require testing of a vehicle's alternator. Thus, the instant case can be distinguished from the *Davis* and *Simmons* cases, where state safety inspections do require the testing of brakes and steering (Code Ann. § 68-1726 (a) (Ga. L. 1953, Nov. Sess., pp. 556, 616, as amended)). Because Days Chevrolet neither was required by law to inspect the vehicle's alternator nor voluntarily assumed the task of doing so, it breached no duty owed to the decedent. Summary judgment for Days Chevrolet should have been granted.

*Judgment affirmed in part and reversed in part. Quillian, P. J., and Shulman, J., concur.*

ARGUED JANUARY 12, 1977 — DECIDED FEBRUARY 14, 1977 — REHEARING DENIED MARCH 4, 1977.

*King & Spalding, Byron Attridge, Lanny B. Bridgers,* for General Motors Corp.

*Swift, Currie, McGhee & Hiers, Warner S. Currie, Samuel P. Pierce, Jr.,* for Days Chevrolet, Inc.

*Powell, Goldstein, Frazer & Murphy, Robert W. Patrick, Jerry B. Blackstock, James M. Griffin,* for appellees.