**SECOND DIVISION
ANDREWS, P. J.,
MCFADDEN and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**October 15, 2014**

# In the Court of Appeals of Georgia

A14A0792. GRANGER et al. v. MST TRANSPORTATION, LLC et al.

ANDREWS, Presiding Judge.

Melanie Granger and Roderick Cody, individually and on behalf of their son, filed an action against MST Transportation, LLC ("MST") and Eric A. Skrine, asserting claims of negligence and negligence per se arising out of injuries they and their son suffered in a collision between a vehicle Granger was driving and a tractor Skrine left on the roadway when it ran out of fuel.[1] The trial court granted summary judgment in favor of MST and Skrine, concluding that Granger and Cody could not establish the proximate causation element of their claims. Granger and Cody now appeal, arguing that the trial court misapplied the intervening act doctrine and failed

---

[1] The complaint also named Gramercy Insurance Company as a defendant and alleged that Gramercy provided insurance coverage for MST.

to consider that there may be more than one proximate cause of an injury. We conclude that proximate cause is an issue for the jury in this case and therefore reverse.

> On appeal from a grant of a motion for summary judgment, we review the evidence de novo to determine whether a genuine issue of fact remains and whether the moving party is entitled to judgment as a matter of law. As it determines whether a genuine issue of material fact remains, a court is bound to view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

(Citations and punctuation omitted.) *Hayes v. Crawford*, 317 Ga. App. 75, 76 (730 SE2d 26) (2012). So viewed, the evidence shows that Skrine was an interstate truck driver for MST. On February 23, 2010, Skrine returned from a trip to Florida and dropped his trailer at the MST depot in McDonough, Georgia and then drove his Century Class ST tractor toward the truck stop in Atlanta where he stored it. Skrine was driving down Moreland Avenue in DeKalb County when his tractor ran out of fuel at approximately 5:30 p.m. Skrine testified that he had probably last refueled in Florida. He stated that he knew he was low on fuel but that he thought he had enough to make it home. The tractor stopped in the right-hand lane along a portion of Moreland Avenue with three lanes of traffic moving in the direction in which Skrine

2

had been traveling. The tractor blocked the lane to within approximately two feet of the line between the right lane and middle lane. Skrine testified that when his vehicle stopped, he put on his flashers and put out three reflective warning triangles.

After running out of gas, Skrine called MST and informed the daughter of MST's owner about the situation. Skrine decided to walk to a small truck stop he had passed about 200 yards before he ran out of fuel, where he filled up a five gallon fuel cannister. When he returned to his vehicle, he poured the fuel into the fuel tank, but the tractor would not start. Skrine returned to the truck stop, refilled the cannister, and added five more gallons of fuel to the tractor's fuel tank, but he was still unable to start the tractor. Skrine then returned to the truck stop for a third time.

Granger's mother had been babysitting Granger and Cody's 10-month-old son that day, and Granger and Cody went to pick him up in the afternoon. According to Granger, they left Granger's mother's house that evening at approximately 7:20 p.m. Granger was driving, Cody was in the front passenger seat, and their son was in a child seat in the back. Granger was driving on Moreland Avenue in the left lane in the same direction Skrine had been traveling. After she crossed over Interstate 285, Granger changed lanes from the left lane to the middle lane. As soon as Granger moved into the middle lane, another car struck her vehicle from behind, hitting the

3

back driver's side of her car. The impact pushed Granger's vehicle from the middle lane into the right lane, where she collided "head on" with the rear of Skrine's tractor. Granger stated that she was about 30 or 40 feet from Skrine's tractor when her vehicle was pushed over and that by the time she saw the tractor, "it was too late." She applied the brakes but could not stop in time to avoid the collision. She stated that she did not notice any triangles or flashers. By the time of the collision, it was dark outside. Granger, Cody, and their son were injured in the collision.

1. "Before any negligence, even if proven, can be actionable, that negligence must be the proximate cause of the injuries sued upon." (Citation and punctuation omitted.) *Grinold v. Farist*, 284 Ga. App. 120, 121 (1) (643 SE2d 253) (2007).[2] "In the tort context, proximate causation includes all of the natural and probable consequences of the tortfeasor's negligence, unless there is a sufficient and independent intervening cause." *Cowart v. Widener*, 287 Ga. 622, 627-628 (2) (b) (697 SE2d 779) (2010). In this regard,

---

[2] Apart from the question of whether Skrine violated OCGA § 40-6-202, see Division 2 infra, the issue of whether Grady and Cody can establish that MST or Skrine was negligent is not before us. While Granger and Cody moved for summary judgment in their favor on the issue of negligence, the trial court did not address that motion. MST and Skrine did not move for summary judgment in their favor on the basis that Granger and Cody could not prove negligence.

4

the general rule is that if, subsequently to an original wrongful act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act . . . was such that its probable or natural consequences could reasonably have been . . . foreseen by the original wrong-doer, the causal connection is not broken.

(Citation and punctuation omitted.) *Ontario Sewing Machine Co., Ltd. v. Smith*, 275 Ga. 683, 686 (2) (572 SE2d 533) (2002). This principle applies even with respect to a third party's intervening illegal act or act of negligence. *Williams v. Grier*, 196 Ga. 327, 338 (2) (26 SE2d 698) (1943); *Stern v. Wyatt*, 140 Ga. App. 704, 705 (1) (231 SE2d 519) (1976). It is also well-settled under Georgia law that "the proximate cause of an injury may be two separate and distinct acts of negligence acting concurrently" and that "[t]he mere fact that the plaintiff's injuries would not have been sustained had only one of the acts of negligence occurred will not of itself operate to limit the other act as constituting the proximate cause." (Citation and punctuation omitted.) *Hayes*, supra, 317 Ga. App. at 78.

MST and Skrine argue that they were entitled to summary judgment because the intervening criminal act of the third party who was driving the vehicle that struck Granger's vehicle and forced it into the right lane was unforeseeable. In addressing

5

this issue, our decision in *Gen. Motors Corp. v. Davis*, 141 Ga. App. 495 (233 SE2d 825) (1977), is instructive. *Davis* involved a wrongful death action arising out of the death of the plaintiff's husband in a collision that occurred after a General Motors truck with a defective alternator stalled on an interstate. The record contained evidence that the plaintiff's husband was driving behind a large panel truck as he approached the stalled truck and was unable to see it until the panel truck swerved into another lane some two to three hundred feet from the motionless truck, leaving the plaintiff's husband with little time to respond. Id. at 496, 498 (4). The plaintiff's husband collided with the stalled truck, which caused his death. Id. In affirming the denial of General Motors' motion for summary judgment, we rejected its argument that an intervening agency was responsible for the collision as a matter of law. Id. at 497-498 (3). We held that a "[a] jury could reasonably conclude that the occurrences subsequent to General Motors' alleged negligence were natural and foreseeable results of its negligence that did not so preponderate as to insulate the manufacturer from liability." Id. at 498 (3).

The facts in this case share similarities with those in *Davis*. The record includes evidence that Skrine's tractor was standing in an active lane of traffic and that Granger, because of another driver's conduct, found herself in a position where she

had little or no chance of avoiding a collision with the stopped vehicle. Consistent with our decision in *Davis*, we conclude that it was not unforeseeable as a matter of law that another motorist on the road, for reasons beyond his or her control (including the negligent or unlawful actions of another driver), might be placed in a position in which it was all but impossible to avoid striking Skrine's stationary tractor. Granger and Cody need not prove that Skrine or MST could foresee the precise manner in which the collision occurred. "[T]he foreseeability analysis is not that specific: the relevant inquiry is not whether the exact intervening negligent act was foreseeable, but whether, as a general matter, the original negligent actor should have anticipated that this general type of harm might result." *Smith v. Commercial Transp.*, 220 Ga. App. 866, 867 (1) (470 SE2d 446) (1996).

We disagree with the trial court's conclusion that summary judgment for MST and Skrine was warranted under *CSX Transp. v. Deen*, 269 Ga. App. 641 (605 SE2d 50) (2004). The plaintiff in *Deen* filed an action against a railroad for negligently maintaining a crossing after she was injured when a car in which she was sitting at night at the crossing was struck from behind by a drunk driver and propelled into a train occupying the crossing. Id. at 641-642. We held that the third-party driver's conduct was an intervening cause of the injury and that it was neither "normal" nor

7

foreseeable that a subsequent driver would miss seeing a car stopped in the road with properly functioning brake lights, headlights, and tail lights and a train sitting in a known railroad crossing. Id. at 643-644 (1).

Unlike in *Deen*, the foreseeability issue in this case does not relate to the visibility of a roadway obstruction to a third-party driver. In addition, this case involves a car left sitting in an active lane of traffic as opposed to one stopped at a known railroad crossing, and "both the Supreme Court and this court have held in a plethora of cases that one who is negligent in blocking or obstructing a roadway, whether by turning, stopping, braking, backing, overturning, colliding, etc., is not relieved of the injurious consequences inflicted by the negligence of another motorist encountering the obstruction." (Citations and punctuation omitted.) *Smith*, supra, 220 Ga. App. at 867.

"Questions of negligence and diligence and of cause and proximate cause and whose negligence constituted the proximate cause of the plaintiff's injuries are, except in plain, palpable and indisputable cases, solely for the jury." (Citations and punctuation omitted.) *Hayes*, supra, 317 Ga. App. at 79. Under the circumstances of this case, the jury must determine whether the conduct of the third-party driver

8

constitutes a sole or concurring proximate cause of the collision between Granger's vehicle and Skrine's tractor and the ensuing injuries.

2. In addressing MST and Skrine's motion for summary judgment based on lack of proximate cause, the trial court concluded that OCGA § 40-6-202, a statute upon which Granger and Cody's claim of negligence per se is based, is inapplicable under the circumstances of this case. We agree.

Granger and Cody argued below that *Deen*, supra, was distinguishable because, in that case, the train with which the plaintiff's car collided "was traveling in the train tracks where it was supposed to be." In response to this argument, the trial court found that, contrary to Granger and Cody's allegations, Skrine did not violate OCGA § 40-6-202. OCGA § 40-6-202 states:

> Outside of a business or residential district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the roadway when it is practicable to stop, park, or so leave such vehicle off the roadway; but in every event, an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles, and a clear view of the stopped vehicle shall be available from a distance of 200 feet in each direction upon the highway.

The record established the presence of various businesses in the vicinity of the collision between Granger's vehicle and Skrine's tractor, and Granger and Cody do

9

not dispute that the collision occurred in a business district. Rather, relying on *White v. Scott*, 284 Ga. App. 87 (643 SE2d 356) (2007), they maintain that OCGA § 40-6-202 applies only within business and residential districts instead of outside of them. In *White*, which is physical precedent, the Court held that the trial court erred in giving the jury a charge based on OCGA § 40-6-202 because the evidence did not support a finding that the stretch of highway where the appellant's truck had stalled was in a business or residential district. Id. at 92 (3).

The opinion in *White* does not explain the basis for concluding that the restrictions in OCGA § 40-6-202 apply within business and residential districts, and we have reached a contrary conclusion in other cases. See *Darwicki v. State*, 291 Ga. App. 239, 240-241 (2) (661 SE2d 859) (2008) (physical precedent); *Southern Intermodal Logistics v. Coleman*, 175 Ga. App. 853, 854 (2) (334 SE2d 888) (1985).[3] "When we consider the meaning of a statutory provision, we do not read it in isolation, but rather, we read it in the context of the other statutory provisions of which it is a part." *Hendry v. Hendry*, 292 Ga. 1, 3 (734 SE2d 46) (2012). Reading

---

[3] We acknowledged but did not resolve the conflict in our cases in *State v. Stafford*, 288 Ga. App. 309, 313 (1) (653 SE2d 750) (2007). The Georgia Supreme Court also declined to resolve this issue in its opinion affirming our decision in *Stafford*. See *Stafford v. State*, 284 Ga. 773, 774 (671 SE2d 484) (2008).

OCGA § 40-6-202 together with the statutory definition of "business district," we conclude that the parking restrictions in OCGA § 40-6-202 do not apply within a business district and that, as the trial court found, the statute is inapplicable here. A business district is defined as "the territory contiguous to and including a highway when within any 600 feet along such highway there are buildings in use for business or industrial purposes, . . .which occupy at least 300 feet of frontage on one side or 300 feet collectively on both sides of the highway." OCGA § 40-1-1 (8). Because a business district is comprised of "the territory contiguous to and *including* a highway," the parking restrictions in OCGA § 40-6-202 cannot be read to apply to roadways within areas meeting the criteria in OCGA § 40-1-1 (8).[4] Our conclusion in this regard, however, is not dispositive of whether Skrine committed an act or acts of ordinary negligence in allowing his tractor to run out of gas in the roadway and obstruct traffic. See *Sinclair Disposal Service v. Ochoa*, 265 Ga. App. 172, 173 (593 SE2d 358) (2004) ("Compliance with the rules [of the road] does not necessarily demonstrate that a defendant exercised ordinary care.") (footnote omitted). That issue is not before us now.

---

[4] The definition of "residence district" includes the same "contiguous to and including" language. See OCGA § 40-1-1 (51).

11

*Judgment reversed. McFadden and Ray, JJ., concur.*