**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 14, 2016**

# In the Court of Appeals of Georgia

A16A0755. EDWARDS v. CAMPBELL.

DILLARD, Judge.

Seth Edwards appeals the trial court's grant of summary judgment to David Campbell in his negligence action, contending that Campbell provided negligent tire-installation training to Joel Lanham and employees of Campbell Tire Company ("CTC") when Campbell sold CTC to Lanham's company, Lanham Enterprises, LLC. Specifically, Edwards alleged that, based on this negligent training, CTC installed two new tires on his grandmother's car in such a way that rendered it dangerous and unstable, which, in turn, resulted in a car accident that seriously and permanently injured him. On appeal, Edwards argues that the trial court erred in granting summary judgment to Campbell on the basis that the negligent training was not the proximate cause of his injuries because (1) Edwards was not given full and fair notice and an

opportunity to respond to the issue of proximate cause, and (2) alternatively, that the court erred in finding that, as a matter of law, Edwards could not establish the proximate-cause element of his negligence claim. For the reasons set forth below, we affirm.

Viewing the evidence in a light most favorable to Edwards, the nonmoving party,[1] the record shows that Campbell and his wife owned CTC for over 20 years, during which time they operated the business under the trade name "Campbell Tire Company." But on April 1, 2009, Campbell, in his capacity as president and a shareholder of CTC, executed an asset-purchase agreement, selling the business and all of its assets to Lanham Enterprises, LLC. As part of the sales contract, Campbell, in his personal capacity as a shareholder of CTC, agreed to provide 60 days of training to Lanham, who had no prior experience in the tire business.[2] And while the other CTC employees "had been there for a long time," Lanham's understanding was that everyone working there had been "primarily trained by . . . Campbell." As to tire

---

[1] *See, e.g.*, *Swanson v. Tackling*, 335 Ga. App. 810, 810 (783 SE2d 167) (2016).

[2] We note that Campbell and his wife were the sole shareholders of CTC, the training provision of the sales contract refers to Campbell as "David," and it is undisputed by the parties that Campbell contracted to provide the 60 days of training in his individual capacity.

installation specifically, Campbell instructed Lanham that "two new tires should be placed on the front axle if only two tires are purchased for a four-tire vehicle." Lanham believed that this procedure was "pretty normal in the industry."

On April 14, 2011, Edwards's grandmother, who is not a party to this action, purchased two new tires from CTC and had them installed on her vehicle. According to Edwards, shortly thereafter, on May 3, 2011, he was driving his grandmother's car when he lost control of the vehicle and was injured in the resulting collision.[3] Nearly two years later, in April 2013, Edwards filed a complaint against Campbell,[4] alleging, in relevant part, that Campbell's failure ensure that the service provided by CTC employees was consistent with accepted automotive and engineering principles and

---

[3] Edwards presented no evidence regarding the nature of the car accident or his resulting injuries to support the allegations in his complaint. Indeed, the only evidence that Edwards submitted to support his response to Campbell's motion for summary judgment was a one-page excerpt from a tire-safety manual, an excerpt from Lanham's deposition transcript (who claimed no personal knowledge of the transaction with Edwards's grandmother or the accident), documents related to the sale of CTC to Lanham Enterprises, and his grandmother's receipt for purchasing the tires at issue. Nevertheless, Campbell does not dispute Edwards's account of the accident.

[4] In addition to Campbell, Edwards asserted several claims against numerous other defendants who are not parties to this appeal. And it is worth noting that, while Campbell is the only appellee, each of the negligence claims against him were also asserted against CTC, Lanham Enterprises, Lanham, Campbell and Lanham's wives, and various John Doe defendants.

3

his failure to properly train Lanham and CTC employees on tire installation, in breach of his contract with Lanham Enterprises, rendered Edwards's vehicle "unreasonably dangerous and defective." Specifically, Edwards contended that the new tires his grandmother purchased were negligently installed on the car's front axle instead of on the rear axle, which exposed him to danger and resulted in the car accident.

Discovery ensued, and in January 2015, Campbell filed a motion for summary judgment, arguing that the undisputed evidence showed that he did not owe a legal duty to Edwards as to his dealings with CTC, which occurred two years before the allegedly negligent tire installation. Ultimately, after a hearing on the matter, the trial court granted Campbell's motion for summary judgment, finding that, although he owed a duty to train CTC employees correctly, two years passed between the alleged negligent training and the incident at issue, and as a matter of law, any proximate cause for Edwards's injuries would flow from Lanham and his employees, not Campbell. This appeal follows.

To begin with, we note that summary judgment is appropriate when "the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law."[5] And a defendant satisfies this

---

[5] *Swanson*, 335 Ga. App. at 811 (punctuation omitted).

4

burden when the court is shown that "the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case."[6] Finally, if the moving party meets this burden, "the nonmoving party cannot rest on its pleadings, but must point to specific evidence giving rise to a triable issue."[7] With these guiding principles in mind, we turn now to Edwards's specific claims of error.

1. In two enumerations of error, Edwards argues that the trial court erred in basing its grant of summary judgment to Campbell on the lack of proximate cause because that issue was not raised in Campbell's initial summary-judgment motion and Edwards was not given a full and fair opportunity to be heard on it before the court entered its judgment. We disagree.

Edwards is indeed correct that a trial court must ensure that "the party against whom summary judgment is rendered is given full and fair notice and opportunity to respond prior to entry of summary judgment."[8] In this regard, the crucial point is "to

---

[6] *Id.* (punctuation omitted).

[7] *Id.* at 811-12 (punctuation omitted).

[8] *Haygood v. Head*, 305 Ga. App. 375, 378 (1) (699 SE2d 588) (2010) (punctuation omitted); *accord BAC Home Loans Servicing, L.P. v. Wedereit*, 297 Ga. 313, 314 (773 SE2d 711) (2015); *Aycock v. Calk*, 222 Ga. App. 763, 764 (476 SE2d

5

ensure that the party against whom summary judgment is sought has had a full and final opportunity to meet and attempt to controvert the assertions against him."[9] But a plaintiff is not required to "respond to issues which are not raised in the motion for summary judgment or to present its entire case on all allegations in the complaint—even on issues not raised in the defendants' motion."[10] Indeed, until the defendant pierces the allegations of the complaint on a particular issue, the plaintiff is "neither required to respond to the motion on that issue, nor . . . to produce evidence in support of his complaint on that issue."[11]

As previously noted, Edwards contends that the trial court granted summary judgment based on the lack of proximate cause without giving him fair notice and an opportunity to respond to that issue prior to the entry of summary judgment; but this claim is belied by the record. As noted by Edwards, Campbell's initial motion for

---

274) (1996).

[9] *Haygood*, 305 Ga. App. at 378 (1) (punctuation omitted); *accord Aycock*, 222 Ga. App. at 764.

[10] *Hodge v. SADA Enters., Inc.*, 217 Ga. App. 688, 690 (1) (458 SE2d 876) (1995); *accord Little v. All. Fire Prot., Inc.*, 291 Ga. App. 116, 119 (661 SE2d 173) (2008).

[11] *Hodge*, 217 Ga. App. at 690 (1) (citations omitted); *accord Little*, 291 Ga. App. at 119.

summary judgment was based solely on the argument that he could not be liable for any negligent training because he owed no legal duty of care to Edwards.[12] Specifically, Campbell argued that he owed no legal duty to Edwards because the injury occurred after he sold the business, over which Campbell did not retain any ownership, control, or responsibility. In response, Edwards argued that, under the 2009 sales contract, Campbell "undertook the duty to provide training" to Lanham in a "non-negligent manner."

Then, Campbell filed a reply brief, contending that, in responding to his motion for summary judgment, Edwards attempted to "recast" his claims against Campbell as "direct negligence claims."[13] And in addressing those claims, Campbell expressly argued, *inter alia*, that, even if Edwards could show that he misinformed Lanham as to the proper method for installing tires in 2009, Edwards could not establish that this

[12] *See Perkins v. Kranz*, 316 Ga. App. 171, 172 (1) (728 SE2d 804) (2012) ("[T]he threshold issue in a negligence action is whether and to what extent the defendant owes a legal duty to the plaintiff." (punctuation omitted)).

[13] Campbell also noted that, although Edwards named Campbell's wife and "Campbell Tire Company, Inc." as defendants, "none of the purported conduct addressed in [Edwards's] response" involved either of those defendants. Although not entirely clear from the record, it appears that Campbell's wife and the company he owned with her may have been dismissed from the case, but regardless, Campbell is the only defendant at issue in this appeal.

purportedly negligent conduct was the proximate cause of his injuries. In support, Campbell relied on Lanham's deposition testimony that, since being trained by Campbell in 2009, he has continued to conduct independent research regarding the "debate within the industry regarding tire placement," and that, if he learned that Campbell's training was incorrect, he would change his tire-installation policy to comply with the law. Indeed, according to Campbell, this "independent investigation, research, and business decision made by Lanham" rendered any deficiency in Campbell's training "too remote to be the proximate cause of [Edwards's] injuries . . . ."

Although Edwards did not file a written response to Campbell's proximate-cause argument, Campbell raised the issue again during the summary-judgment hearing. Specifically, Campbell reiterated his argument that Lanham's independent research and decision not to change the tire-installation policy "sever[ed] any causal nexus that could have possibly been created by the negligent training . . . ." And in doing so, Campbell specifically reminded the trial court *and Edwards* that Edwards had not yet responded to this causation argument. Nevertheless, instead of responding to Campbell's proximate-cause argument, Edwards addressed unrelated issues that he contended were still subject to further discovery and not ripe for review. In sum,

8

because Campbell briefed the issue of proximate cause before the hearing, presented oral argument on the issue, and specifically highlighted Edwards's failure to respond to it at the summary-judgment hearing, Edwards's claim that he was not given a full and fair opportunity to respond to the issue of proximate cause prior to the entry of summary judgment is unavailing.[14]

2. Turning now to the merits of Edwards's negligence claim, he argues that the trial court erroneously entered a "facially invalid order," which found that the passage of two years alone—between Campbell's negligent training and Edwards's accident—"equal[ed] a break in proximate cause." Again, we disagree.

---

[14] *See Tidwell v. Tidwell*, 251 Ga. App. 863, 864 (554 SE2d 822) (2001) (affirming a trial court's grant of summary judgment based on a finding that the relevant claim was barred by the applicable statute of limitation even though the defendant's written motion for summary judgment was based only on *res judicata* because there was no transcript to confirm the appellant's contention that the statute-of-limitation issue was not raised during the summary-judgment hearing). *Cf. Choice Capital Corp. v. Phillips*, 256 Ga. App. 773, 775 (569 SE2d 580) (2002) (noting that a nonmovant is denied a full and fair opportunity to respond to an issue "in circumstances where the record shows that neither party briefed or presented oral argument on the claim"); *Dixon v. Metro. Atlanta Rapid Transit Auth*., 242 Ga. App. 262, 266 (3) (529 SE2d 398) (2000) (concluding that the appellants did not have a full and fair opportunity to respond to the assertions made with respect to certain claims when the parties did not brief or present oral argument on them, and thus, reversing the trial court's grant of summary judgment as to those claims).

To prevail on a cause of action for negligence, Edwards is required to prove the following essential elements: "a legal duty to conform to a standard of conduct; breach of the duty; a legally sufficient causal connection (proximate cause) between conduct breaching the duty and the resulting injury, and damage flowing from the breach."[15] And before any negligence, even if proven,[16] can be actionable, that

---

[15] *Cieplinski v. Caldwell Elec. Contractors, Inc.*, 280 Ga. App. 267, 272 (633 SE2d 646) (2006); *see also Rasnick v. Krishna Hosp., Inc.*, 289 Ga. 565, 566 (713 SE2d 835) (2011) ("In order to have a viable negligence action, a plaintiff must satisfy the elements of the tort, namely, the existence of a duty on the part of the defendant, a breach of that duty, causation of the alleged injury, and damages resulting from the alleged breach of the duty.").

[16] For the purpose of resolving this appeal, we assume, without deciding, that the training Campbell provided to Lanham was negligent and that he breached his contractual duty to provide proper training. But we acknowledge that, throughout this litigation, Campbell has "vigorously dispute[d]" that he trained Lanham in a manner that was "negligent or violated the standard of care that existed in the automobile repair industry in April of 2009." Campbell has also noted, in passing, that even though discovery was ongoing for almost two years, Edwards presented "absolutely no evidence regarding the standard of care" in the tire industry as of 2009. And indeed, while Edwards stated during oral argument that the industry standard for tire installation was not "a reasonably contested issue" and that experts were "available," the only evidence he presented regarding the standard of care for tire installation is a one-page excerpt from a publication authored by the Rubber Manufacturers Association, which bears no publication date. But despite highlighting this lack of evidence for the trial court, Campbell nevertheless asserted that, because Edwards cannot establish proximate cause, the court need not reach the issue of whether Campbell, in fact, breached the applicable standard of care when he trained Lanham. Not surprisingly, neither Edwards nor the trial court addressed the breach element of his claim, and it was not briefed by the parties on appeal. Thus, like the trial court, we

10

negligence "must be the proximate cause of the injuries sued upon."[17] Indeed, the requirement of proximate cause "constitutes a limit on legal liability; it is a policy decision that, for a variety of reasons, e.g., intervening act, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery."[18] Furthermore, proximate causation includes "all of the natural and probable consequences of the tortfeasor's negligence, unless there is a sufficient and independent intervening cause."[19] Specifically,

---

will not consider whether the training that Campbell provided in 2009 was, in fact, negligent. *See Smyrna Dev. Co. v. Whitener Ltd. P'ship*, 280 Ga. App. 788, 790 (2) n.3 (635 SE2d 173) (2006) (declining "to address any . . . issues that might be lurking in the record but are not specifically supported in the brief by argument and citation to authority" (punctuation omitted)).

[17] *Granger v. MST Transp., LLC*, 329 Ga. App. 268, 270 (1) (764 SE2d 872) (2014) (punctuation omitted); *accord Bacon v. Mayor & Aldermen of City of Savannah*, 241 Ga. App. 211, 212 (525 SE2d 115) (1999); *see also Toyo Tire N. Am. Mfg. Inc. v. Davis*, 299 Ga. 155, 158 (2) (787 SE2d 171) (2016) ("Causation is an essential element of . . . negligence claims. To establish proximate cause, a plaintiff must show a legally attributable causal connection between the defendant's conduct and the alleged injury." (punctuation omitted)).

[18] *Delta Airlines, Inc. v. Townsend*, 279 Ga. 511, 515 (1) (614 SE2d 745) (2005) (punctuation omitted); *accord Reed v. Carolina Cas. Ins. Co.*, 327 Ga. App. 130, 132 (2) (762 SE2d 90) (2014); *Bacon*, 241 Ga. App. at 212.

[19] *Granger*, 329 Ga. App. at 270 (1) (punctuation omitted); *accord Cowart v. Widener*, 287 Ga. 622, 627-28 (2) (b) (697 SE2d 779) (2010).

the general rule is that if, subsequently to an original wrongful act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act claimed to break the connection between the original wrongful act and the subsequent injury was such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act.[20]

Finally, although the question of proximate cause is "usually submitted to the jury as a question of fact, it may be decided as a matter of law [when] the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion, that the defendant's acts were not the proximate cause of the injury."[21]

As previously mentioned, Edwards argues that the trial court erred by relying solely on the two-year lapse between Campbell's training in 2009 and Edwards's 2011 car accident in finding that Edwards failed to satisfy the proximate-cause

---

[20] *Ontario Sewing Mach. Co. v. Smith*, 275 Ga. 683, 686 (2) (572 SE2d 533) (2002) (punctuation omitted); *accord Granger*, 329 Ga. App. at 270 (1); *Govea v. City of Norcross*, 271 Ga. App. 36, 44-45 (3) (608 SE2d 677) (2004).

[21] *Atlanta Gas Light Co. v. Gresham*, 260 Ga. 391, 393 (4) (394 SE2d 345) (1990) (punctuation omitted); *accord Beasley v. A Better Gas Co.*, 269 Ga. App. 426, 427-28 (1) (604 SE2d 202) (2004).

12

element of his negligence claim. But Edwards points to no legal authority to support this contention that a substantial length of time can never be the sole basis for determining that the chain of causation flowing from an initial negligent act has been broken—*i.e.*, that the second negligent act was not reasonably foreseeable as a matter of law to the first negligent actor.[22] Nevertheless, contrary to Edwards's assertion, it does not appear from the trial court's order that the court relied *solely* on the two-year lapse in making its proximate-cause determination. Indeed, the court also found that, under the particular circumstances of this case, "any proximate cause would flow from Lanham and his employees, not . . . Campbell." Thus, it appears that the trial court concluded that the negligent actions of Lanham and his employees in 2011 were

[22] *See supra* note 20 & accompanying text. To support his argument that a proximate-cause determination may not be based solely on the lack of temporal proximity when there are two distinct negligent acts, Edwards merely relies on two cases in which Georgia courts, in addressing the issue of proximate cause, focused generally on whether the intervening negligent act was *reasonably foreseeable* to the defendant, without referencing any particular lapses of time. *See Pearson v. Tippmann Pneumatics, Inc.*, 281 Ga. 740, 741 n.1, 744 (3) (642 SE2d 691) (2007) (holding that the trial court erred by failing to accurately instruct the jury on the legal principles of proximate cause and the foreseeability of intervening acts when the trial court instructed the jury, *inter alia*, that "[p]roximate cause is that which is nearest in the order of responsible causes, as distinguished from remote, that which stands last in causation, not necessarily in time or place, but in causal relation"); *Govea*, 271 Ga. App. at 44-46 (3) (addressing the issue of proximate cause in terms of whether certain intervening causes were reasonably foreseeable to the defendant, without referencing the particular time frame involved).

intervening acts sufficient to break any chain of causation flowing from Campbell's negligent training.[23] But regardless of the trial court's stated reasons for its decision, it is well settled that "an appellate court will affirm a judgment if it is correct for any reason, even if that reason is different than the reason upon which the trial court relied."[24]

Here, the relevant claim against Campbell was that he negligently trained "the Lanham Defendants" to install new tires on the front axle when two new tires are purchased for a vehicle with four wheels, and that Lanham and his employees relied "entirely on the negligent and reckless training provided by Campbell" when they installed his grandmother's tires in that manner. In response, Campbell contends that Lanham's ongoing independent decision, over the course of two years, not to change the allegedly improper tire-installation policy was an intervening cause that broke any chain of causation flowing from Campbell's training. As previously explained, subsequent intervening acts are sufficient to break the chain of causation flowing from a first negligent act when the subsequent acts are not reasonably foreseeable to

---

[23] *See supra* note 20 & accompanying text.

[24] *City of Gainesville v. Dodd*, 275 Ga. 834, 835 (573 SE2d 369) (2002).

the first negligent actor.[25] In this regard, we have held that foreseeable consequences are "those which are *probable*, according to ordinary and usual experience," and "those which, because they happen so frequently, may be expected to happen again."[26] Similarly, the Supreme Court of Georgia has explained that

> [o]ne is bound to anticipate and provide against what usually happens and what is likely to happen; but it *would impose too heavy a responsibility* to hold him bound in like manner to guard against what is unusual and unlikely to happen or what, as it is sometimes said, is only remotely and slightly probable.[27]

Here, it is undisputed that Campbell, who had owned and operated CTC for 20 years, was competent to train Lanham on proper tire-installation policies and that, in adopting those policies, Lanham specifically incorporated Campbell's instruction that tires should be installed on the front axle of a vehicle when only two tires are purchased for a vehicle with four wheels. Indeed, Lanham testified that CTC's policy of installing tires on the front axle, rather than the rear axle, in such circumstances

---

[25] *See supra* notes 18-20 & accompanying text.

[26] *Dowdell v. Wilhelm*, 305 Ga. App. 102, 105 (699 SE2d 30) (2010); *accord Brown v. All Tech Inv. Grp., Inc.*, 265 Ga. App. 889, 893 (1) (595 SE2d 517) (2003).

[27] *Gresham*, 260 Ga. at 392-93 (4) (punctuation omitted).

15

had been in place for 27 years, and he had not altered that policy since purchasing the business in 2009. But notwithstanding Lanham's *initial* reliance on Campbell's training regarding this policy, his undisputed testimony, set forth *infra*, shows that he did not *exclusively* rely on Campbell's training after he purchased the business and continued to leave that policy in place. Significantly, as a business owner, Lanham had certain legal obligations to ensure, on an ongoing basis, that his company was selling and installing tires in a manner that would not render his customers' vehicles unsafe, or at the very least, to warn his customers of any potential danger resulting from CTC's work.[28] And in fact, Lanham satisfied these obligations when he

[28] *See Vulcan Materials Co. v. Driltech, Inc.*, 251 Ga. 383, 387 (3) (306 SE2d 253) (1983) (noting, in the context of product manufacturers, that the law imposes a duty on such manufacturers "to produce safe items, regardless of whether the ultimate impact of the hazard is on people, other property, or the product itself" (emphasis and punctuation omitted)); *City of Atlanta v. Benator*, 310 Ga. App. 597, 605 (5) (714 SE2d 109) (2011) (acknowledging, in a negligent-construction case, that there is a duty implied by law to perform work in accordance with industry standards); *Underwood v. Select Tire, Inc.*, 296 Ga. App. 805, 812-13 (3) (676 SE2d 262) (2009) (holding that companies that sold and installed tires assumed a "duty of discovery and warning" when they made representations regarding a tire's quality and fitness for use); *Boyce v. Gregory Poole Equip. Co.*, 269 Ga. App. 891, 896 (2) (605 SE2d 384) (2004) ("[W]hen [the seller of a product] made investigations into the product's expected use, the seller should have recognized danger in such use and known that the purchaser and third parties would rely upon such determination; such seller is under an additional duty over the general duty regarding warning because it has assumed a duty to exercise ordinary care in making its investigation and recommendation . . . .").

16

independently decided, after researching the matter extensively, to keep the relevant policy for tire installation in place.

Specifically, Lanham testified that, since entering the tire industry in 2009, he has spent "countless hours talking to customers and studying tires and researching and reading trade magazines." Lanham further indicated that if he discovered Campbell had given him incorrect information regarding any particular procedures, he would have personally investigated the matter so that he could follow the correct ones. As to tire installation, Lanham's initial research revealed that there was "no consensus" regarding whether the tires should be installed on the front or rear axle when only two tires are purchased, but he continued researching the issue so that he could adopt policies for CTC that were "the most safe." Indeed, Lanham was fully aware of the "debate within the industry regarding tire placement," and he sought to enact tire-installation policies that complied with the law and best practices. And according to Lanham, other than the instant case, he has never received any complaints regarding incidents or accidents that occurred because new tires were placed on the front axle rather than the rear axle.

In light of Lanham's legal obligations, as a business owner, to ensure the safe installation of CTC tires, it was not reasonably foreseeable to Campbell—*i.e.*, the

17

*natural* or *probable* consequence of any negligent training he provided in 2009[29]—that Lanham would blindly follow his instructions on tire installation for *two years* without independently confirming that CTC's tire-installation procedures complied with industry standards and without altering any policies that he discovered were improper or unsafe. Indeed, Campbell was not bound to anticipate that Lanham would, as Edwards apparently contends, rely "exclusively" on the 2009 training as to Campbell's tire-installation policies, while completely disregarding his legal obligations to CTC customers, because any new business owner doing so would be "unusual" and "only remotely and *slightly probable*."[30] Thus, under the particular circumstances of this case, we conclude that the trial court did not err in finding that, as a matter of law, Edwards cannot show that Campbell's negligent training was the proximate cause of his injuries.[31]

---

[29] *See supra* note 19 & accompanying text.

[30] *Dowdell*, 305 Ga. App. at 105 (punctuation omitted); *see supra* note 27 and accompanying text.

[31] *See, e.g.*, *Townsend*, 279 Ga. at 511, 515 (1) (noting—in the context of evaluating an airlines liability for claims based on the Georgia Dram Shop Act and common law negligence—that "[t]he proximate connection between the consumption of alcohol by an airline passenger during a flight and his subsequent act of drunk driving is much more remote and attenuated" than it is between land-based establishments and a drunk driver); *Gresham*, 260 Ga. at 393 (4) (holding that, as a

18

matter of law, it was not reasonably foreseeable to a company that installed and maintained a pipe located more than two feet from the steps of a mobile home in a place "no one had reason to go" that one of that home's occupants would trip while exiting the home, fall on the pipe, and suffer injuries as a result); *Blakely v. Johnson*, 220 Ga. 572, 574, 577 (140 SE2d 857) (1965) (holding that, as a matter of law, it was not reasonably foreseeable to agents of their employer (an owner of a gas station)—who "blew whistles and shouted and otherwise made loud noises for the purpose of attracting attention and customers into [a gas station]—that such conduct would distract a nearby driver to the extent that he collided with the plaintiff's car, thereby causing her injuries, and noting that the employees "were not bound to anticipate that a passing motorist would negligently *disregard his own safety because of their advertising acts,* and that such motorist would violate traffic laws and cause injuries to third persons"); *Duncan v. Klein*, 313 Ga. App. 15, 22-23 (3) (720 SE2d 341) (2011) (physical precedent only) (holding that it was unforeseeable to an attorney and his law firm that, as a result of giving *incorrect advice* to the plaintiff about the merits of his discrimination claims against his then-current employer, the plaintiff "would elect to enroll in a law school in a faraway place, leave his family behind, and refinance his home to cover the costs of law school and the expenses of his family in the meantime[,]" and therefore, the bad legal advice was not the proximate cause of those costs and expenses as a matter of law); *Rustin Stamp & Coin Shop, Inc. v. Ray Bros. Roofing & Sheet Metal Co.*, 175 Ga. App. 30, 32 (1) (332 SE2d 341) (1985) (physical precedent only) (holding that an air conditioning repair company, which negligently failed to mark an unsupported opening in the roof, was not the proximate cause of rain damage to a business when the store owner could have *recognized the problem and corrected it* or notified the repair company of the issue); *see also Ontario Sewing Mach.*, 275 Ga. at 686 (2) ("The rule that an intervening and independent wrongful act of a third person producing the injury, and without which it would not have occurred, should be treated as the proximate cause, *insulating and excluding the negligence of the defendant*, would not apply if the defendant had reasonable grounds for apprehending that such wrongful act would be committed." (punctuation omitted) (emphasis supplied); *Reed*, 327 Ga. App. at 132 (2) ("The requirement of proximate cause constitutes a limit on legal liability; it is a policy decision that, for a variety of reasons, e.g., intervening act, the defendant's conduct and the plaintiff's injury are too remote for the law to countenance recovery."

19

For all of the foregoing reasons, we affirm the trial court's grant of summary judgment to Campbell.

*Judgment affirmed. Phipps, P. J., and Peterson, J., concur.*

---

(punctuation omitted)); *Bacon*, 241 Ga. App. at 212 (same).