**FIFTH DIVISION**
**MERCIER, C. J.,**
**MCFADDEN, P. J., and RICKMAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**March 27, 2024**

# In the Court of Appeals of Georgia

A24A0593. DRUCKER v. MORGAN et al.

MERCIER, Chief Judge.

Ceileth Drucker sued Jonathan H. Morgan, 219 Battery Circle, LLC, and Starland Property Management, LLC, for injuries she sustained while staying at a short-term rental home in Savannah, Georgia. The trial court granted summary judgment to all defendants, and Drucker filed this appeal. For reasons that follow, we affirm in part and reverse in part.

Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. See *Granger v. MST Transp.*, 329 Ga. App. 268, 268-69 (764 SE2d 872) (2014). We review the grant of

summary judgment de novo, construing the evidence and all reasonable inferences in the light most favorable to the nonmovant. See id.

So viewed, the record shows that in May 2019, Drucker booked a room through Airbnb for a two-night stay at a home located at 219 Battery Crescent in Savannah. Morgan owned the property, acting as co-host for Airbnb guests with his company's employee, Anna Sacks. According to the booking information, parking was available "either on the street or in the driveway near the front door, before the tree." Drucker exchanged several messages with Sacks prior to the visit, including a message she received from Sacks reiterating the parking options:

> PARKING: Park either on the street or in the driveway near the front door, before the tree. (Do not drive through the driveway to the other side, as there are exposed tree roots that could do damage to your vehicle.)

Drucker and her husband, Robert Sutherland, arrived at the rental property on the afternoon of June 23, 2019, for their two-night stay. As instructed, they parked in the "driveway," about 50 feet from the house with their car facing the home. Drucker noticed that the area was lush with vegetation, including a long, thick vine hanging down near their car, close to where one would "walk to the house." Drucker

remarked to Sutherland that the vine "look[ed] like something Tarzan would swing from" and that their son "would love that."

The couple checked in and got settled, then left the property for dinner, returning later that evening and parking in the same location. The next morning, Drucker and Sutherland planned to explore Savannah. As they approached their car, Drucker asked Sutherland to stand by the vine so that she could take his picture. He walked toward the vine, and she stood about 10 to 15 feet in front of the car, slightly toward the driver's side, ready to take the picture. Sutherland placed his hand on the vine and gave it "a light tug" to see if it was sturdy. At that point, a limb overhanging the parking area fell down and struck Drucker, causing significant injuries.

An arborist who examined the fallen limb averred that the limb "was severely decayed and [had] been dead for years, and over the years, had been dropping larger and larger parts due to decay." Noting that the limb was located over the parking area and that the tree had sustained extensive storm damage in prior years, the arborist opined:

> The branch that fell on Ms. Drucker was over 11 feet long and would have been readily observable. The tree's broken top, numerous broken limb studs, cavities, stress cracks and decay were all readily observable.

Even a casual examination of the tree would have seen these many problems and should have caused concern over the tree's safety because of its many clearly observable problems. . . . The readily observable problems in the tree and its location next to a parking area with limbs that extended over the parking area created a significant risk of injury or death to persons using the driveway.

The record further shows that Morgan did not own the strip of property described in the Airbnb information as the "driveway near the front door," where Drucker parked and was injured. Although Morgan believed at his deposition that the property strip was a "county right-of-way" owned by Chatham County, a county official averred that the county does not own, maintain, or have a right of way over the strip. According to the official, county tax records show no registered owner for the strip, and taxes have not been paid on the unclaimed land "for decades."

Drucker sued Morgan, his property management corporation (Starland), and 219 Battery Circle, a limited liability corporation to which Morgan transferred ownership of the rental property several days after Drucker was injured, in premises liability and for nuisance.[1] Following discovery, the trial court granted summary

---

[1] Sutherland initially was a party-plaintiff along with Drucker, but he dismissed his claim.

judgment to each defendant on Drucker's claims. The trial court found that Starland did not own, manage, or exercise any control over the Airbnb rental property or the adjacent strip of land on which Drucker was injured, undermining any premises liability claim. The trial court made a similar finding regarding 219 Battery Circle, noting that the LLC did not own the Airbnb property at the time of the injury. With respect to Morgan, the trial court concluded that although he owned the rental property, he did not own, occupy, or exercise control over the adjacent strip of land and thus was not subject to premises liability. Alternatively, it found that the intervening and superseding action of Sutherland pulling on the vine caused Drucker's injuries. Finally, the trial court noted that Drucker appeared to have withdrawn her nuisance allegation, and even if she had not, a single, isolated act of alleged negligence could not support a nuisance claim. This appeal followed.

1. Drucker has not challenged or refuted the trial court's conclusion that Starland and 219 Battery Circle did not own, manage, control, or occupy the Airbnb property or strip of land where Drucker was injured, and the record supports the court's determination. Drucker also has not argued that the trial court erred in granting the defendants summary judgment on her nuisance allegation. Accordingly,

5

we affirm the grant of summary judgment to Starland and 219 Battery Circle, and we affirm the grant of summary judgment to Morgan on Drucker's nuisance claim.

2. As to the premises liability claim against Morgan, however, we reach a different result. Pursuant to OCGA § 51-3-1: "Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." In other words, a landowner must use due care in keeping two distinct areas — the premises *and* approaches to the property — safe for invitees. See *Todd v. F.W. Woolworth Co.*, 258 Ga. 194, 196 (1) (366 SE2d 674) (1988). Without dispute, Morgan did not own the strip of land where he instructed his Airbnb guests to park. Drucker argues, however, that questions of fact remain as to whether that area constituted an approach to Morgan's property. We agree.

Our Supreme Court has construed the term "approach" in the premises liability context to mean:

> that property directly contiguous, adjacent to, and touching those entryways to premises under the control of an owner or occupier of land, through which the owner or occupier, by express or implied invitation,

6

has induced or led others to come upon his premises for any lawful purpose, and through which such owner or occupier could foresee a reasonable invitee would find it necessary or convenient to traverse while entering or exiting in the course of the business for which the invitation was extended.

*Motel Properties v. Miller*, 263 Ga. 484, 486 (2) (436 SE2d 196) (1993).

Generally, property is "contiguous, adjacent to, and touching" the entryway of an owner's premises if it is "within the last few steps taken by invitees, as opposed to mere pedestrians, as they enter or exit the premises." *Motel Properties*, 263 Ga. at 486 (2) (citation, footnote, and punctuation omitted). But identifying the property that falls within the "last few steps" necessarily depends upon the circumstances of each particular case. See *Martin v. Six Flags Over Ga. II*, 301 Ga. 323, 333 (II) (B) (801 SE2d 24) (2017); *Combs v. Atlanta Auto Auction,* 287 Ga. App. 9, 15 (4) (650 SE2d 709) (2007). And property that might not otherwise comprise an approach "may be deemed part of the premises and approaches where the landowner has taken affirmative steps, for its own particular benefit, to exercise control and dominion over the public way or the property of another." *Martin*, 301 Ga. at 333 (II) (B). Ultimately,

7

"what physically constitutes an approach" is a question of fact. *Motel Properties*, 263 Ga. at 485 (1).

The trial court found that, as a matter of law, Drucker was not injured on an approach to Morgan's property because

> the [tree from which the branch fell] was situated on the other side of the unclaimed area of land, across the pathway, and approximately fifty feet away from [the rental] [p]roperty. There is no evidence of record that the tree — or any part thereof — was located on the path leading to the [rental] [p]roperty from the area where renters parked. As such, the area of land where the [i]ncident occurred was not the "last step" and does not fall within the definition of an "approach" as defined by Georgia jurisprudence.

Construed favorably to Drucker, however, the record shows that at the time the branch fell, she was standing 10 to 15 feet in front of her car, which was parked facing the rental home in the area described by Morgan as "the driveway near the front door" to the house. In that area, Morgan had placed reflectors, a stone bird bath base, and several old logs to block off and define the appropriate place for his Airbnb guests to park. The tree may have been on the unclaimed strip of land, 50 feet from the home and situated off of the walking pathway, and Sutherland may have stepped off of the

8

path to touch the vine. But Drucker was in the designated parking area for the rental home, standing in front of her car, toward the house, when she was struck by a rotten, overhanging branch that fell from the tree. The parking area was adjacent to Morgan's property. And although Morgan argues that the area was a "public way" over which he exercised no control, he blocked off the area and designated it as parking for his renters.

Despite the trial court's suggestion otherwise, the fact-specific concept of "the last few steps" is not restricted to the actual "last step" taken by a party before entering an owner's property. See *Martin*, 301 Ga. at 333 (II) (B); *Combs*, 287 Ga. App. at 15 (4). We have not found — and the parties have not cited — any evidence regarding the exact distance between where Drucker was struck and the entry to Morgan's property. But Morgan certainly could have foreseen and expected that his Airbnb guests would access his property directly from the parking area, crossing under the tree branch. And given the Airbnb listing describing the parking area as "near the door" to the home, as well as Drucker's testimony that she was standing toward the house, 10 to 15 feet from her car, when the branch fell on her, a factual question remains as to whether she was "within the last few steps taken by invitees . . . as [she]

9

enter[ed] or exit[ed] the premises." *Martin*, 301 Ga. at 333 (II) (B) (citation and punctuation omitted).

Furthermore, Morgan's decision to block off what he characterized as a "public way" to establish a guest parking area raises an issue of fact as to whether he "[took] affirmative steps, for [his] own particular benefit, to exercise control and dominion" over the area, such that he had a duty to exercise ordinary care to keep it safe for his Airbnb guests. *Martin*, 301 Ga. at 333 (II) (B). Although Morgan claims that he exercised no control over the property, a jury could find otherwise. By his own testimony, Morgan defined the parking area by setting up barriers, preventing cars from driving onto a certain part of the "public way." The trial court, therefore, erred in concluding that, as a matter of law, Drucker's injury did not occur on an approach to Morgan's property. See *Combs*, 287 Ga. App. at 15-16 (4) (in analyzing whether a public way constitutes an approach to landowner's property in the context of vehicular traffic, "we consider . . . whether [the landowner] has appropriated it for his own benefit, using it for some purpose other than a public way"); *Scoggins v. Campbellton Plaza Corp.*, 114 Ga. App. 23, 26 (1) (150 SE2d 179) (1966) (ramp in common area of shopping center constituted an approach to grocery store's premises

because the store "invited the plaintiff to use the ramp which had been constructed at its request as a facility to its business").

3. The trial court further found that, as a matter of law, Sutherland's decision to grab the vine constituted an unforeseeable intervening and superceding cause of Drucker's injuries, insulating Morgan from liability. Again, we disagree.

Negligence is only actionable if it is the proximate cause of the injuries at issue. See *Granger*, 329 Ga. App. at 270 (1). The concept of proximate cause "includes all of the natural and probable consequences of the tortfeasor's negligence, unless there is a sufficient and independent intervening cause." Id. (citation and punctuation omitted). Generally,

> if, subsequently to an original wrongful act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote, still if the character of the intervening act was such that its probable or natural consequences could reasonably have been foreseen by the original wrong-doer, the causal connection is not broken.

Id. (citation and punctuation omitted).

A third party's intervening negligent act may constitute a "new cause" of injury. *Granger*, 329 Ga. App. at 270 (1) (citation and punctuation omitted). But "the

11

proximate cause of an injury may be two separate and distinct acts of negligence acting concurrently[.]" Id. (citation and punctuation omitted). "[T]he mere fact that the plaintiff's injuries would not have been sustained had only one of the acts of negligence occurred will not of itself operate to limit the other act as constituting the proximate cause." Id. (citation and punctuation omitted).

The trial court found that Sutherland's "attempt to 'hang on [the vine] like Tarzan' without looking to see to what the vine was attached, or otherwise look for any hazards prior to hanging on said vine, was not a foreseeable danger to a landowner as contemplated by Georgia law." (punctuation omitted). Construed favorably to Drucker, however, the record shows that Sutherland did not "hang" or put his weight on the vine before the branch fell; he "gave [the vine] a light tug" with one hand. Drucker's arborist testified that the branch, which had been dead for years, was visibly rotten, "in really bad shape" and "going to fall eventually." According to the arborist, "[i]t could have lasted another year or two[,] [or] [i]t could have fallen the next day." He likened the rotten limb to a shotgun, "cocked and ready to go," noting that a healthy limb would not have fallen when Sutherland tugged on the vine. The arborist further explained that the vine was not directly connected to the dead limb; it was

attached to higher limbs in the tree, and "movement of the vine likely disturbed the decayed limb, allowing it to fall."

Given this evidence, issues of fact remain as to proximate cause. See *Hayes v. Crawford*, 317 Ga. App. 75, 79 (730 SE2d 26) (2012) ("[E]xcept in plain, palpable, and indisputable cases," questions regarding who proximately caused an injury should be resolved by the jury.). As noted above, two separate events acting concurrently can proximately cause an injury. See *Granger*, 329 Ga. App. at 270 (1). Even if Sutherland was negligent in tugging on the vine, the record contains evidence that the branch, which was not attached directly to the vine, would not have fallen had it been healthy. A reasonable jury could find that, given the evidence of observable problems with the tree and the decayed branch, Morgan should have foreseen that an outside force acting on the tree might cause the branch to fall and strike a person in the parking area below. See id. at 271 (1) ("[T]he relevant inquiry [in the foreseeability analysis] is not whether the exact intervening negligent act was foreseeable, but whether, as a general matter, the original negligent actor should have anticipated that this general type of harm might result.") (citation and punctuation omitted). The trial court, therefore,

erred in granting Morgan summary judgment on this basis. See id. at 272 (1); *Hayes*, 317 Ga. App. at 79.

*Judgment affirmed in part and reversed in part. McFadden, P. J., and Rickman, J., concur.*